#24578-rev & rem-SLZ

**2008 SD 13**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellant,

  v.

CHAD JOHN WILSON and
JOHN JAMES MIDMORE,                             Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
CUSTER COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN J. DELANEY
Judge

* * * *

LAWRENCE E. LONG
Attorney General

CRAIG M. EICHSTADT
Deputy Attorney General
Pierre, South Dakota
  and
TRACY L. KELLEY
Custer County State's Attorney
Custer, South Dakota
  and
MICHAEL R. MOORE
JEFFREY M. BANKS
Special Custer County Deputy State's Attorneys
Huron, South Dakota                             Attorneys for appellant.

ROBERT VAN NORMAN of
Nooney Solay & Van Norman
Rapid City, South Dakota                        Attorneys for appellees.

* * * *

ARGUED JANUARY 8, 2008
OPINION FILED **02/13/08**

#24578

ZINTER, Justice

[¶1.] This is an intermediate appeal from circuit court discovery proceedings in a criminal case. The circuit court was presented with the procedural question of how to protect work product and theories of the defense in contested proceedings involving defense requests for scientific testing of physical evidence. In some of the proceedings, the circuit court considered *ex parte* motions, briefs and affidavits. On occasion, the circuit court also conducted *ex parte* hearings, including one in which the court received expert testimony. Because we conclude that the circuit court, in attempting to balance the rights of all parties, nevertheless failed to follow statutory procedural requirements, we reverse and remand.

## I.

[¶2.] On August 8, 2006, five people were shot at Legion Lake Lodge in Custer State Park during the Sturgis Motorcycle Rally. The victims were allegedly members of the Outlaw Motorcycle Club. Numerous witnesses identified the perpetrator as a passenger in a white Ford 350 pickup truck that was parked in the Lodge's parking lot. The pickup was found abandoned hours later on a logging road not far from the Lodge. Later that evening, John James Midmore and Chad John Wilson (Defendants) were arrested for the shootings. Authorities searched the pickup and the scene of the shooting and located, among other things, a .40 caliber gun magazine, three .40 caliber semiautomatic pistols, and ammunition. During the subsequent investigation, authorities determined that Wilson leased the pickup, and that Midmore and Wilson were associated with the Hell's Angels Motorcycle Club.

-1-

[¶3.]        Beginning in November of 2006, the prosecution and defense began having difficulty arranging the scientific testing of physical evidence, in particular, the magazine and the pickup.  In the course of those disputes, the circuit court and the defense began conducting *ex parte* communications through sealed motions (with sealed exhibits and affidavits of counsel), sealed briefs, and *ex parte* hearings, one of which involved court consideration of the Defendants' experts' testimony.  According to the State, since September of 2006, the court conducted seven hearings, and the court engaged in *ex parte* communications in four of them.  The issues discussed included joint representation of the Defendants, prosecution/defense disputes over scientific testing of the physical evidence, and venue of a potential trial.  Although the issue in this appeal is limited to a sealed motion, brief and affidavits relating to scientific testing of the pickup, a chronological history of a number of the *ex parte* motions, affidavits, and hearings is required to provide context.

[¶4.]        The first *ex parte* communication, in November of 2006, occurred in a hearing on the issue of joint representation of the Defendants.  In an open hearing the circuit court stated, "I am going to have to address issues with counsel, which if disclosed to the State or anybody else, would violate their constitutional right to silence and their constitutional rights.  I don't know any other way to do it unless [I] sneak back to my chambers and do it. . . .  I understand people may have uproars

about it, but I have no other choice at this time." The State objected[1] and

attempted to relate evidence that it thought would create irreconcilable conflicts of

interest, yet the circuit court resolved the matter in an *ex parte* hearing without

participation by the State. In hindsight, a review of that transcript reflects that

virtually everything said by the court, counsel, and the Defendants could have been

disclosed in open court.[2]

[¶5.]        Shortly thereafter, the defense, in the open portion of that hearing,

requested to be present when the State conducted tests on the magazine of one of

the .40 caliber semiautomatic pistols, arguing that if any fingerprint testing was

performed on the magazine, it would destroy evidence they desired to obtain. When

---

1.      In response to this objection, both defense counsel and the court
        indicated that there would be no legal arguments made concerning the
        conflict of interest and they would only be discussing factual matters.
        Nevertheless, during the *ex parte* hearing, out-of-state defense counsel
        made disparaging remarks about the viability of some of the State's
        legal issues. The same defense counsel also informed the court that he
        did not agree with the State's theory of the case set forth at the grand
        jury proceedings.

2.      We also observe that after the hearing reconvened in public, the State
        renewed its objection indicating that it was aware of evidence that it felt
        would create an inherent conflict within the trial setting, and that joint
        representation would be impossible without raising those conflicts. Although
        the circuit court responded that it was not the State's "problem," that is not
        the case. The State has a right to provide input to ensure that a fair and
        impartial trial was held. The State's obligation is not limited to the role of an
        advocate. The State also has a duty to ensure a fair trial. State v.
        Brandenburg, 344 NW2d 702, 705 (SD 1984). *See also* United States v.
        Bagley, 473 US 667, 675 n6, 105 SCt 3375, 3380, 87 LEd2d 481 (1985)
        (providing, "the prosecutor's role transcends that of an adversary: he 'is the
        representative not of an ordinary party to a controversy, but of a sovereignty .
        . . whose interest . . . in a criminal prosecution is not that it shall win a case,
        but that justice shall be done.'") (citing Berger v. United States, 295 US 78,
        88, 55 SCt 629, 633, 79 LEd 1314 (1935)).

the circuit court requested the defense to explain why the State's testing would impair their ability to collect evidence from the magazine, the defense responded, "I can tell you in camera," and, "I would be happy to file a document under seal setting forth what we are concerned about." The circuit court responded, "I would appreciate if you would do that."

[¶6.] The defense responded in February 2007, by filing an *ex parte* motion partly under seal for an order to allow its experts to be present during testing of the magazine. In a section that was not sealed, Defendants alleged that the State's Attorney made several agreements that would have allowed the presence of a defense expert, but the State subsequently breached those representations and agreements. The defense also argued that the State's testing altered some of the evidence such that defense testing could be compromised. Therefore, the defense requested that it be allowed to be present before any future testing.

[¶7.] On February 23, 2007, the circuit court, Defendants, and defense counsel participated in an *ex parte* hearing on this motion. The defense reiterated its request to be present at any future testing, and further requested that it be allowed to do independent testing before the State continued its tests. The defense also requested the court to order the State to answer a list of questions regarding the State's evidence testing. Finally, those present engaged in a substantive discussion of change of venue. Notwithstanding the Defendants' argument on

appeal, our review of the record reflects that the substantive *ex parte* discussion on venue was not "limited" and "unremarkable."[3]

[¶8.] On March 14, 2007, the circuit court granted Defendants' February *ex parte* motion for an order allowing its experts to be present during testing on the magazine. The court's order required the State to refrain from further testing on the magazine and allowed Defendants' experts to conduct independent testing. The order also required the State to provide an area at the State Crime Lab for the Defendants' experts. Although the State's experts were not allowed to dispute whether or not the defense's testing would alter the evidence for the State's testing purposes, the circuit court assured the State that, based on the judge's personal experience with handguns, the defense's testing of the magazine would not affect any testing the State wished to perform.

[¶9.] The State filed a motion to reconsider, a motion for stay of order, and a motion for a *Daubert* hearing. These motions were denied without hearing. Thereafter, on March 22, 2007, the State filed a petition for an intermediate appeal with this Court challenging the *ex parte* motion and hearing. This Court denied the State's petition, expressing no opinion on the merits.

---

3. The defense and the court discussed the option of trying the case in Rapid City instead of Custer, South Dakota. The court informed the defense that there was a larger jury pool in Rapid City and that jurors were more likely to attend jury duty. The court also discussed the possibility of the defense losing jurors in Custer due to the elderly pool and people taking vacation. The court elaborated on potential juror numbers under various scenarios, and although the circuit court stated that it would give the State a chance to be heard later, it also indicated how it would likely rule on a change of venue motion. We observe nothing in the transcript that required these *ex parte* communications.

[¶10.] On May 14, 2007, the defense filed another *ex parte* motion (not under seal) to bring a gun magazine into the courthouse "for purposes of demonstration of disassembling a .40 caliber gun magazine[.]" The circuit court granted this motion, and on May 15, 2007, proceeded with another *ex parte* hearing. At this hearing, the court, defense witnesses, and defense counsel discussed in great detail how to disassemble the magazine and whether or not it would destroy evidence. An expert introduced the "demonstrative magazine" and showed the court how the defense's experts proposed to disassemble the actual magazine. After this demonstration, the court allowed the defense to proceed with testing before the State, stating,

> At this stage of the game, the Court has observed the disassembly of a magazine that is represented to be of the same kind and nature as that in question. . . . The court sees no reasonably conceivable way in which the magazine can be damaged or altered without that alteration being apparent, particularly if the disassembly and testing and reconstruction is done under the eye of a court-appointed monitor of some sort yet to be determined. The magazine itself is an exercise in simplicity and with proper photographing by the [S]tate before the test is done, the ability of the defense to run the test and to alter the magazine, should such a thing happen either by intent or accident, would be virtually - - as near as the court can tell impossible to hide. So I don't see the difficulty with that.

[¶11.] On June 21, 2007, the defense filed another *ex parte* motion (this time under seal) to test the pickup outside the presence of the State. In this motion, the defense disclosed the testing it sought to perform on the pickup. In support of the motion, the defense filed sealed *ex parte* affidavits from Defendants' attorneys describing their view of certain communications and disputes between the defense and the State regarding access to the pickup for testing. They alleged that the State had failed to produce evidence, that the State was making demands upon the

defense as a prerequisite to defense testing, and that the State had retracted prior agreements to make the pickup available. The defense finally disclosed a theory of its case that would support testing. On this occasion, the circuit court did not conduct an *ex parte* hearing, nor did it conduct any hearing at all. In fact, the State was not notified of the defense's motion until June 27, 2007, six days after the defense submitted it to the court. Affording no opportunity for the State to respond with a reply brief or a hearing, the circuit court granted Defendants' motion on June 28.

[¶12.] The court's order permits the defense and its experts to examine the pickup, collect evidence, and report the defense testing under seal to the court. The order further requires one of the attorneys for the Defendants to be present at all stages of the defense testing to record the tests conducted, the nature and extent of any changes made to the vehicle or items removed, and to ensure that the integrity of the vehicle is maintained in the same condition as when the Defendants first begin their tests.

[¶13.] As a result of these latest proceedings regarding the pickup, the State filed its second petition for an intermediate appeal, and this Court granted the State's petition. A jury trial is currently stayed. The State appeals the process by which the circuit court considered and granted the defense's motion concerning scientific testing of the pickup; and specifically, whether the circuit court abused its discretion in deciding this matter on a sealed, *ex parte* motion and *ex parte* affidavits without any opportunity for the State to present its views.

**II.**

[¶14.]     This dispute involves application of criminal discovery statutes. "Statutory interpretation is a question of law, reviewed *de novo*." State v. Burdick, 2006 SD 23, ¶6, 712 NW2d 5, 7.  Matters of a circuit court's actions under discovery statutes are reviewed under an abuse of discretion standard.  Anderson v. Keller, 2007 SD 89, ¶5, 739 NW2d 35, 37.

**III.**

[¶15.]     Because of the *ex parte* motion and lack of notice, the State indicates that it is unaware whether the circuit court conducted any *ex parte* hearings related to testing the pickup.  Our review of the record provided indicates that the court did not conduct any *ex parte* hearings on this motion.  The court did, however, conduct *ex parte* hearings regarding conflicts of interest, venue, discovery, and evidence testing of the magazine.  The State argues that *ex parte* hearings relating to these issues were unauthorized.  Because there has been a number of *ex parte* hearings, and because oral argument reflected it is likely that the disputes over *ex parte* hearings on testing have not been resolved,[4] we briefly address the issue.

[¶16.]     *Ex parte* communications are generally prohibited.  "A judge must not independently investigate the facts in a case."  SD CODE OF JUDICIAL CONDUCT, Canon 3B(7)(a) cmt, SDCL ch 16-2 app. (1993).  The Code of Judicial Conduct only allows a judge to engage in *ex parte* communications "that do not deal with

---

4.     On July 5, 2007 – after the State filed this petition for intermediate appeal –
       the defense submitted another motion and brief (partly under seal) for
       discovery and discovery compliance.

substantive matters or issues on the merits," and then only "when expressly authorized by law to do so." *Id.*, Canon 3(B)(7)(a),(e).

[¶17.] SDCL 23A-13-16 (Rule 16(d)(1))[5] is the relevant statute that authorizes *ex parte* discovery requests in certain limited circumstances. The statute provides:

> *Upon a sufficient showing* the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate. *Upon motion* by a party*, the court may permit the party to make such showing, in whole or in part, in the form of a written statement* to be inspected by the judge alone. If the court enters an order granting relief following such ex parte showing, the entire text of the party's statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

SDCL 23A-13-16 (emphasis added).

[¶18.] In our view, this statute requires a two-step process in which notice and a hearing (with both sides present) must be provided before e*x parte* discovery or testing is ordered and before *ex parte* evidence or affidavits are considered. As the Federal Rules of Criminal Procedure Advisory Committee notes, the analogous 1975 federal provision requires that a trial court should first "determine whether an *ex parte* proceeding is appropriate, bearing in mind that *ex parte* proceedings are

---

5. FED. R. CRIM. P. 16(d)(1) provides:

> At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.

disfavored and not to be encouraged." FED. R. CRIM. PROC. 16(d)(1) advisory committee's note. Second, "it must determine whether a protective or modifying order shall issue." *Id*. (citing House Report No. 04-247). These procedural requirements are found in the statutory language requiring a "sufficient showing" for the discovery request. Although the statute permits the court to consider *ex parte* evidence in making that showing, it does so only "upon motion," which, absent statutory authorization, requires a hearing. It is only after a motion and hearing that *ex parte* evidence may be submitted to a court, and then, if the court permits it, only in the form of a "written statement." SDCL 23A-13-16. There is, however, no authority to obtain discovery or resolve a discovery dispute entirely by sealed motion, *ex parte* evidence, *ex parte* hearing, and the examination of witnesses with only one party present. As we interpret the statute, the first step is to properly notice a motion to obtain the requested discovery/testing, and if necessary, a motion to present a sealed written statement in support of the discovery/testing sought. The court must then conduct an open hearing in which both parties can argue whether a sealed written statement may be submitted and ultimately whether the moving party has made a "sufficient showing" to justify the discovery/testing request.

[¶19.] In this case, the circuit court failed to follow this procedure regarding the defense request to conduct scientific testing on the pickup. Instead -- absent any noticed motion and hearing -- the court decided the *ex parte* motion on sealed affidavits that included sealed arguments of defense counsel arguing their position regarding the discovery dispute. Without a properly noticed motion and hearing,

-10-

the court's process allowed the defense to argue and resolve its discovery/testing dispute entirely with *ex parte* evidence. This procedure violated SDCL 23A-13-16, which plainly requires "a showing" and "a motion" to proceed in this manner. Although the defense argues this is a reasonable interpretation of the statute, such an interpretation would permit the prosecution as well as the defense to present their views of discovery disputes, including supporting *ex parte* evidence, without any notice or opportunity to be heard from the opposing party.[6] Such an interpretation does not comport with basic understandings of due process.

---

6.  Although the May 15, 2007 *ex parte* hearing regarding the magazine is not an issue on appeal, the circuit court heard expert testimony on testing the magazine. We previously stated that similar *ex parte* communications are improper. In *State v. McCrary*, 2004 SD 18, ¶32, 676 NW2d 116, 125, a trial judge initiated an *ex parte* contact with the victim's therapist. At sentencing, the trial court made the following statement: "I took it upon myself to call [the victim's therapist] and ask him one question and that was whether or not he had reason to believe . . . that the child was not molested by the father and his answer was no." *Id.* In concluding that this constituted reversible error, we stated:

> Any contact by the trial court with a witness or potential witness other than for scheduling or merely procedural matters should be accompanied with full due process protection for both parties such as advance notice and an opportunity to be heard SDCL ch 16-2. Code of Judicial conduct, Canon 3B(7). "A judge must not independently investigate the facts in a case." Canon 3B(7)(a) cmt. Clearly this prohibition was not followed in this case and we need not ponder the effect of this ex parte contact. In *O'Connor v. Leapley,* 488 NW2d 421, 423 (SD 1992) we held that "[i]f an ex parte communication is invited or initiated by the judge, no prejudice needs to be shown . . . Prejudice is implicit in the judge's invitation or initiation of an improper ex parte communication." (citing State v. Barker*, 227 Neb 842, 420 NW2d 695, 699 (1988)).

*Id.*

(continued . . .)

[¶20.]     The defense, however, contends that the circuit court was authorized

to consider the *ex parte* motion and affidavits because of the following cumulative

factors:  (1) the motion contained its theory of defense and work product, (2) the

defense and the State were engaged in a discovery dispute, (3) the defense was in a

hurry to move the case forward, and (4) Defendants had been in jail for a year.

[¶21.]     We recognize that some theories of defense and work product are

protected from discovery.  Nevertheless, under SDCL 23A-13-13 (Rule 16(b)(1)) and

23A-13-14 (Rule 16(b)(2)),[7] protection for scientific testing of physical evidence is

_____

(. . . continued)

> We also noted, "[a] judge simply cannot be both a judge and [an attorney] searching out facts favorable to the [prosecution or defense] without abandoning his or her judicial neutrality."  *Id*. ¶33, 676 NW2d at 125.  SDCL 23A-13-16 does not provide an exception to this prohibition.

7.     SDCL 23A-13-13 (Rule 16(b)(1)) provides, in relevant part:

> If the defendant requests disclosure under § 23A-13-3 or 23A-13-4, upon compliance with such request by the prosecuting attorney, the defendant, on written request of the prosecuting attorney, *shall permit the prosecuting attorney to inspect and copy or photograph any results or reports . . . of scientific tests or experiments made in connection with the particular case,* or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to his testimony.

(Emphasis added.)

SDCL 23A-13-14 (Rule 16(b)(2)) provides:

> *Except as to scientific or medical reports*, § 23A-13-12 or 23A-13-13 does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the

(continued . . .)

#24578

limited if it will be used in the defendant's case-in-chief at trial or presented

through witness testimony. SDCL 23A-13-13 provides that "the State may discover

results of examinations and scientific tests the defendant 'intends to introduce as

evidence in chief at the trial or which were prepared by a witness whom the

defendant intends to call at the trial when the results or reports relate to his

_____
(. . . continued)

> defendant, or his attorneys or agents in connection with the
> investigation or defense of the case, or of statements made by
> the defendant, or by prosecution or defense witnesses, or by
> prospective prosecution or defense witnesses, to the defendant,
> his agents or attorneys.

(Emphasis added.)

SDCL 23A-13-3 (Rule 16(a)(1)(C)) provides:

> Upon written request of the defendant, the prosecuting attorney shall
> permit the defendant to inspect and copy or photograph books, papers,
> documents, photographs, tangible objects, buildings, or places, or
> copies or portions thereof, which are within the possession, custody, or
> control of the prosecuting attorney and which are material to the
> preparation of his defense or intended for use by the prosecuting
> attorney as evidence in chief at the trial, or were obtained from or
> belong to the defendant.

SDCL 23A-13-4 (Rule 16(a)(1)(D)) provides:

> Upon written request of a defendant, the prosecuting attorney shall
> permit a defendant to inspect and copy or photograph any results or
> reports of physical or mental examinations, and of scientific tests or
> experiments, or copies thereof, which are within the possession,
> custody, or control of the prosecuting attorney, the existence of which
> is known, or by the exercise of due diligence may become known, to the
> prosecuting attorney, and which are material to the preparation of the
> defense or are intended for use by a prosecuting attorney as evidence
> in chief at the trial.

testimony.'"[8]  State v. Westerfield, 1997 SD 100, ¶15, 567 NW2d 863, 868.

Furthermore, in *State v. Guthrie,* we noted that "[p]hysical evidence, whether

exculpatory or inculpatory, cannot be withheld by a criminal defense attorney."

2001 SD 89, ¶8, 631 NW2d 190, 194.[9]  Therefore, contrary to the defense's

assertion, the testing of the pickup does not *necessarily* implicate work product or

defense theory protections that would justify disregard of the notice and hearing

requirements of SDCL 23A-13-16.[10]

[¶22.]      Furthermore, the State argues that it does not seek the test results:  it

only seeks to participate in proceedings regarding defense motions for testing of

physical, scientific evidence.  Regardless of the merits of the State's argument, the

Defendants' reliance on defense theory and defense work product is premature and

misplaced until the parties' conflicting claims regarding access to the pickup for

testing (and the evidence's potential use at trial) are resolved in compliance with

the discovery statutes.

---

8.    This does not mean, of course, that the defense may not move to limit or
      restrict disclosure of defense theories or work product.  Should the State seek
      such evidence under SDCL 23A-13-13, and should the defense contend the
      evidence involves defense theories or work product, the defense must move to
      limit disclosure in accordance with SDCL 23A-13-16.

9.    As we noted on remand in *State v. Guthrie*, 2002 SD 138, ¶12, 654 NW2d 201,
      205, the trial proceedings involved a purported suicide note held in the
      possession of defense counsel until the time of trial.  The trial court found
      that the defense attorney "tried to 'ambush' the State with this purposed
      suicide note, hoping the State would not have time to refute the evidence."

10.   For this same reason, the defense's argument that the information is
      protected by attorney-client privilege under SDCL 19-13-3 fails.

[¶23.]    So also, the discovery dispute with the State did not justify disregarding the procedural requirements of the statute.  A party's right to test physical evidence does not authorize the acquisition of testing rights through *ex parte* proceedings.  At oral argument, the defense conceded that the dispute about the pickup is simply about *access* to test it.  While it argued that information from a secret source justifies keeping the specific tests secret, the defense has presented no reason why its request to test and its *request to submit* a secret source sealed statement cannot be presented in an open hearing where both parties are afforded an opportunity to be heard.  And certainly, a hurry to engage in discovery, the Defendants' incarceration, and the State's completion of its testing do not justify a disregard of statutory procedural requirements.

[¶24.]    The defense finally claims these proceedings are analogous to *in camera* reviews of documents, citing *United States v. Pelton*, 578 F2d 701 (8thCir 1978), *cert denied*, 439 US 964, 99 SCt 451, 58 LEd2d 422 (1978) and *United States v. Felt*, 491 FSupp 179 (DDC 1979).  In *Pelton*, however, an *in camera* review of documents occurred only *after* a hearing and a subsequently authorized request to submit documents for *in camera* review in compliance with the federal equivalent of SDCL 23A-13-16.  Similarly, in *Felt*, the district court reviewed privileged government documents *in camera* only after the defense had made a "showing of necessity" to require the court to examine the documents *in camera*.  491 FSupp at 184.  These cases do not stand for the proposition that the defense may obtain discovery through *ex parte* motions and hearings without the motion and showing required in SDCL 23A-13-16.

#24578

[¶25.]     We therefore conclude that the circuit court abused its discretion in granting discovery on *ex parte* motions, briefs, affidavits, and hearings.  The circuit court's order regarding testing of the pickup and sealing of the results is reversed and remanded for further proceedings in accordance with the appropriate discovery statutes.

[¶26.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.