MEIERHENRY, Justice.
[¶ 1.] Rosemary Armstrong and Al-phie Petersen (Homeowners) appeal the circuit court’s denial of a writ of certiora-ri challenging the Turner County Board of Adjustment (Board)’s approval of a conditional use permit issued to the Vi-borg Cooperative Elevator Association (Elevator). We reverse on the grounds that Homeowners did not receive due process because one of the Board members had a disqualifying interest and should not have participated as a decision maker.
FACTS AND PROCEDURAL BACKGROUND
[¶ 2.] In 2006, the Elevator sought to construct a commercial grain storage facility on property it owned located adjacent to the Viborg city limits in Turner County. The proposed facility consisted of two bunkers. Each bunker measured 100 x 250 feet and would hold approximately 250,000 bushels of corn. While the Elevator’s property was zoned agricultural, the property abutted an area zoned residential. Homeowners owned single-family residences on this abutting property within *646 the city limits of Viborg. The Elevator’s proposed commercial grain storage facility was not a permitted use under Turner County zoning ordinances. The zoning ordinances, however, identified a grain storage facility as a conditional use eligible for a conditional use permit. To acquire a conditional use permit, the Elevator had to submit an application to the Turner County Board of Adjustment.
[¶ 3.] Instead of applying for a conditional use permit, the Elevator applied for a building permit with the Turner County zoning administrator. By mistake, the administrator issued the Elevator a building permit on October 6, 2006. The administrator realized her mistake on or about October 18, 2006, and informed the Elevator that the building permit was invalid and that the Elevator needed a conditional use permit. During the interim, the Elevator claimed it had spent around $44,000 on the facility. The Elevator subsequently applied to the Board for a conditional use permit.
[¶4.] The Board scheduled a public hearing on the application for November 14, 2006. Homeowners attended the hearing to object. Homeowners claimed that placement of the facility was incompatible and would disturb the residential atmosphere of the area and diminish the value of their homes. The Homeowners’ concerns about the permit included the distance of the facility to their homes, the continuous noise from the facility’s large aeration fans and the increased traffic on the access road between the homes and the storage facility. The Elevator acknowledged that approximately one thousand trucks would use the access road during the harvest season. The Homeowners also complained of seeing an increase in rodents, dust, and drainage problems attributable to the placement of the grain storage facility. The Board had several concerns with the application. One of the concerns was the proposed facility’s close proximity to the city’s residential area. The Board ultimately denied the permit because of the Elevator’s application was inadequate.
[¶ 5.] In December of 2006, the Elevator filed a revised application, and another hearing was set for January 9, 2007. Between the Board’s hearing on the original application and the hearing on the revised application, one of the Board members was replaced. The outgoing county commissioner was replaced [on the Board] by County Commissioner Lyle Van Hove.
[¶ 6.] Before going on the board of adjustment, Van Hove had been involved in the dispute between the Homeowners and the Elevator in his role as county commissioner. Van Hove knew that the county’s employee, the county zoning administrator, had erroneously issued a building permit. Van Hove was worried about the county’s possible liability to the Elevator for the mistake. Consequently, Van Hove in his capacity as a county commissioner made contact with the attorney for the Elevator and also with the attorney of the Homeowners in an attempt to negotiate conditions that would satisfy the Homeowners. The attorney for the Homeowners testified that his conversation with Van Hove included the topic of the County’s liability for the Elevator’s expenditures on the facility between the time of issuing the invalid building permit and the time the Elevator was notified of its invalidity. The Elevator claimed it spent $44,000 during that time.
[¶ 7.] On January 9, 2007, the Board held a hearing on the Elevator’s revised application. In this hearing, Van Hove participated as a member of the Board. At the close of the hearing, Van Hove moved to approve the conditional use permit. All of the members of the board *647 approved the conditional use permit for two grain storage bunkers. The Board adopted the written findings of the zoning administrator in accord with the county-ordinances. The findings certified that the proposed facility complied with the conditional use zoning ordinance requirements. One of the requirements was for the facility to be generally compatible with surrounding property. In addressing compatibility, the Board cited compatibility with property on three sides of the facility — a lagoon to the north, the industrial park to the east, and the Viborg elevator three blocks to the south. The findings did not include any specific reference to compatibility with the residential property to the west of the proposed grain facility. Nevertheless, the Board approved the permit.
[¶ 8.] Homeowners filed a petition for writ of certiorari with the circuit court on February 9, 2007. The Board subsequently scheduled a rehearing. The Board’s notice for rehearing cited the reason for rehearing was because “[t]he Board [had] received criticism of an alleged deficiency in the Findings reached.” On October 9, 2007, the Board conducted the rehearing and added seven conditions to the permit. This time, the Board acknowledged the residential housing to the west side of the storage facility and entered a finding as to general compatibility as follows: “property is adjoining to landfill to lagoon areas to the north, industrial to the east, as to the west, residential to the west, meets set backs, like properties on 3 sides.” Under additional findings the Board wrote, “Brian Schmidt — Expert Witness — testified loss of value to adjoining residential property.”
[¶ 9.] Homeowner’s writ of certiorari proceeded to a hearing before the circuit court on July 10, 2008. The circuit court denied the writ of certiorari. The Homeowners appeal the court’s decision raising two issues: (1) whether Homeowners were denied due process because Van Hove should have been disqualified as a decision maker because of his interest in the outcome, and (2) whether the Board exceeded its authority when the Board did not follow the county’s ordinance as to compatibility with adjoining property.
STANDARD OF REVIEW
[¶ 10.] The standard of review in many of the recent appeals from a county’s decision on a conditional use permit has been limited in scope because the appeals reached the Court through a writ of certio-rari. However, a recent case, Goos RV Center v. Minnehaha County Comm’n, approved of a de novo review pursuant to SDCL 7-8-27. 2009 SD 24, ¶ 8, 764 N.W.2d 704, 707. Although Goos RV Center appears on the surface to contradict some of our prior decisions on proper appellate procedure and standard of review, the source of the different procedures derives from the legislature. Prior to 2004, the law provided that a county board of adjustment had the authority to approve conditional use permits and variances. The law also specified that appeals from a board of adjustment went directly to circuit court by way of a writ of certiorari. See id. ¶ 20, 764 N.W.2d at 711 (citing Jensen v. Turner Cty. Bd. of Adjustment, 2007 SD 28, ¶ 4, 730 N.W.2d 411, 412-13); see also Elliott v. Board of County Comm’rs of Lake County, 2005 SD 92, ¶ 14, 703 N.W.2d 361, 367. In 2004, the legislature removed the provision in the law that gave a county board of adjustment the authority to approve conditional use permits. In its place, the legislature passed a new law giving the power to the county to designate the entity responsible for approving conditional use permits. SDCL 11-2-17.3. Although the legislature left intact the appeal procedure from a board of adjustment, the legislature omit *648 ted any reference to an appeal procedure if the county-designated entity was not a board of adjustment.
[¶ 11.] The effect of the omission has created inconsistencies in the appeal process depending on which entity a county designates as the approving authority. Thus, the same action of approving or denying a conditional use permit may have a different appeal procedure depending on which entity approves the permit. In this case, the county board of adjustment approved the permit, and the statute requires that an appeal from a decision of a county board of adjustment proceed directly into circuit court in the form of a writ of certiorari. SDCL 11-2-62. In Goos RV Center, the Minnehaha County ordinances designated the planning and zoning board as the approving authority and apparently allowed an appeal to the county commission before proceeding to circuit court. 2009 SD 24, ¶ 21, 764 N.W.2d at 711. Generally, an appeal into circuit court from a county commission decision is a de novo review under SDCL 7-8-27. Whether intentional or inadvertent, the current law allows for inconsistent procedures among counties and a confusing system of approving and appealing conditional use permits.
[¶ 12.] Since the appeal in this case is from a county board of adjustment, it comes to the Court through a writ of cer-tiorari. SDCL 11-2-61; SDCL 11-2-62; SDCL 21-31-8. See Jensen, 2007 SD 28, ¶ 4, 730 N.W.2d at 412-13 (citing Elliott, 2005 SD 92, ¶¶ 13-14, 703 N.W.2d at 367). The Court’s scope of review on a writ of certiorari “cannot be extended further than to determine whether the ... board ... has regularly pursued [its] authority....” SDCL 21-31-8. We have explained the limited scope of review as follows:
Our consideration of a matter presented on certiorari is limited to whether the board of adjustment had jurisdiction over the matter and whether it pursued in a regular manner the authority conferred upon it. A board’s actions will be sustained unless it did some act forbidden by law or neglected to do some act required by law.
Jensen, 2007 SD 28, ¶ 4, 730 N.W.2d at 413 (quoting Elliott, 2005 SD 92, ¶ 14, 703 N.W.2d at 367). Additionally, we have said, “[w]ith a writ of certiorari, we do not review whether the [board’s][ ] decision is right or wrong. We are limited to determining whether the [board][] regularly pursued its authority.” Duffy v. Circuit Court, Seventh Judicial Circuit, 2004 SD 19, ¶ 33, 676 N.W.2d 126, 138.
ANALYSIS
[¶ 13.] The Homeowners first argue that they did not receive a fair and impartial due process hearing due to the presence of Van Hove on the Board. The Homeowners contend that Van Hove had a conflict of interest in the proceedings because of his involvement as a county commissioner in trying to resolve the dispute. Zoning Laws and Ordinances
[¶ 14.] The legal framework for a county’s zoning authority stems from the South Dakota legislature. The legislature authorizes a county to establish and administer zoning ordinances. SDCL ch 11-2. The board of county commissioners has the authority to adopt by ordinance a comprehensive zoning plan that regulates land use in the county. SDCL 11-2-13. The responsibility to develop and present the county zoning plan or any subsequent changes rests with a county planning and zoning commission. SDCL 11-2-2; SDCL 11-2-11. The planning and zoning commission is comprised of “five or more members” appointed by the county com *649 mission and “at least one member shall be a member of the board of county commissioners.” SDCL 11-2-2. Once approved, the zoning ordinances are administered by a county administrative official: SDCL 11-2-25. Appeals from an administrator’s decisions are heard by the board of adjustment. SDCL 11-2-53. In addition to hearing and deciding appeals, the board of adjustment has the power to authorize variances. Id. The board of county commissioners can appoint a separate board of adjustment or may appoint “the planning and zoning commission to act as a board of adjustment,” or the board of county commissioners “may act as and perform all the duties and exercise the powers of the board of adjustment.” SDCL 11-2-49; SDCL 11-2-60.
[¶ 15.] The legislature set forth the specifics required in a county zoning ordinance “that authorizes a conditional use of real property.” SDCL 11-2-17.3. The statute provides:
A county zoning ordinance adopted pursuant to this chapter that authorizes a conditional use of real property shall specify the approving authority, each category of conditional use requiring such approval, the zoning districts in which a conditional use is available, and the criteria for evaluating each conditional use. The approving authority shall consider the stated criteria, the objectives of the comprehensive plan, and the purpose of the zoning ordinance and its relevant zoning districts when making a decision to approve or disapprove a conditional use request.
SDCL 11-2-17.3.
[¶ 16.] A conditional use is defined by the South Dakota Legislature as follows:
[A]ny use that, owing to certain special characteristics attendant to its operation, may be permitted in a zoning district subject to the evaluation and approval by the approving authority specified in § 11-2-17.3. A conditional use is subject to requirements that are different from the requirements imposed for any use permitted by right in the zoning district.
SDCL 11-2-17.4. The Turner County zoning ordinances further define conditional use as:
A use that would not be appropriate generally or without restriction throughout the zoning district but which, if controlled as to number, area, location, or relation to the neighborhood, would promote the public health, safety, or general welfare....
Turner County, SD, Zoning Regulation 2.02 (June 1998). The Turner County zoning ordinances allow for conditional use of property and designate the county board of adjustment as the approving authority for conditional use permits. Under the zoning ordinances, the Turner County Board of Adjustment is the same as the county board of planning and zoning and consists of “five members, one of whom must be a member of the Turner County Commission.” Turner County, SD, Zoning Regulation 4.03.01 (June 1998).
[¶ 17.] Technically, under the law, each entity — the board of county commissioners, the planning and zoning commission, and the board of adjustment — has a different statutory function with different statutory responsibilities and powers in regard to land use and regulation. Keeping the legal duties of each entity separate becomes problematic when their functions and members are intermingled. Nevertheless, the necessity of keeping the entities separate is of utmost importance. In Bechen v. Moody County Bd. of Comm’rs, overruling a prior case, we noted:
[T]hat when a county commission decides not to appoint a separate board of *650 adjustment, but elects to sit as the board of adjustment, this does not mean that the county commission and the board of adjustment become a single entity. While the members of each board may be identical, each board remains a separate legal entity with its own distinct powers and responsibilities under state law.
2005 SD 93, ¶ 11, 703 N.W.2d 662, 665.
[¶ 18.] The Turner County zoning ordinances set forth the procedure for the board of adjustment when considering a conditional use application. The ordinance, in part, provides as follows:
Before any Conditional Use Permit shall be granted, the Board of Adjustment shall make written findings certifying compliance with the specific rules governing individual Conditional Use Permits and that satisfactory provision and arrangement has been made concerning the following, where applicable:
(a) Ingress and egress to property and proposed structures thereon, with particular reference to automotive and pedestrian safety and convenience, traffic flow and control, and access in case of fire or catastrophe;
(b) Off-street parking and loading areas where required;
(c) Refuse and service areas, with particular reference to (a) and (b) above;
(d) Utilities, with reference to location, availability, and compatibility;
(e) Screening and buffering with reference to type, dimensions and character;
(f) Signs, if any, and proposed exteri- or lighting with reference to glare, traffic safety, economic effect, and compatibility and harmony with other properties in the district;
(g) Required yards and other open space; and
(h) General compatibility with adjoining properties and other property in the zoning district in which such use is to be located.
Turner County, SD, Zoning Regulation 4.04.02(D) (June 1998).

Due Process Right to a Fair and Impartial Decisionmaker

[¶ 19.] The Fifth Amendment to the United States Constitution provides that “[n]o person shall ... be deprived of life, liberty, or property, without due process of law[.]” US Const, amend. V. The United States Supreme Court has long held that invasion of private property by the government is not unlimited. Nectow v. City of Cambridge, 277 U.S. 183, 188, 48 S.Ct. 447, 72 L.Ed. 842 (1928) (citing Euclid v. Ambler Co., 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926)). Zoning restrictions are allowed “for the purpose of promoting health, safety, or the general welfare of the county.” SDCL 11-2-13. Zoning ordinances serve to limit the use of private property. “Although it is axiomatic that private property cannot be taken without due process of law, this limitation does not shield private property from regulations, such as zoning, which are implemented under the police power.” Schafer v. Deuel County Bd. of Comm’rs, 2006 SD 106, ¶ 11, 725 N.W.2d 241, 245 (citations omitted). Conditional uses within a zoning district are authorized by ordinance and “owing to certain special characteristics attendant to its operation,” must be evaluated and approved separately. SDCL 11-2-17.4. The nature of the evaluation and approval as it applies to specific individuals or situations is quasi-judicial. See Schafer, 2006 SD 106, ¶ 16, 725 N.W.2d at 249. Thus, a local zoning board’s decision to *651 grant or deny a conditional use permit is quasi-judicial and subject to due process constraints. As such, the “ ‘constitutional right to due process includes fair and impartial consideration’ by a local governing board.” Hanig v. City of Winner, 2005 SD 10, ¶ 10, 692 N.W.2d 202, 205 (quoting Riter v. Woonsocket Sch. Dish, 504 N.W.2d 572, 574 (S.D.1993)).
[¶ 20.] The due process requirement is particularly important when individual property rights are affected. For the property owner seeking the conditional use permit and for other affected property owners, due process requires fair and impartial consideration by the Turner County Board of Adjustment. We have said:
A fair trial in a fair tribunal is a basic requirement of due process. This applies to administrative agencies which adjudicate as well [as] to courts. Not only is a biased decision maker constitutionally unacceptable, but our system of law has always endeavored to prevent even the probability of unfairness.
Id. ¶10, 692 N.W.2d at 205-06 (quoting Strain v. Rapid City Sch. Bd., 447 N.W.2d 332, 336 (S.D.1989)).
[¶ 21.] Because a county board of adjustment functions as an adjudicatory body when it hears requests for conditional use permits, members of the board must be free from bias or predisposition of the outcome and must consider the matter with the appearance of complete fairness. A fair and impartial hearing depends on “whether there was actual bias or an unacceptable risk of actual bias.” Id. ¶ 11, 692 N.W.2d at 206 (citing Voeltz v. John Morrell & Co., 1997 SD 69, ¶ 12, 564 N.W.2d 315, 317). A reviewing court must consider “ ‘whether the record establishes either actual bias on the part of the tribunal or the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the tribunal’s procedure.’ ” Id. (quoting Strain, 447 N.W.2d at 336).
[¶ 22.] It should be noted that the standard for disqualification in a quasi-judicial proceeding is stricter than in a regulatory or rule-making proceeding. Northwestern Bell Tel. Co., Inc. v. Stofferahn, 461 N.W.2d 129, 133 (S.D.1990) (citing Application of Union Carbide Corp., 308 N.W.2d 753, 757 (S.D.1981)). The standard for disqualification in a regulatory or rule-making proceeding “is that the official should be disqualified only when there has been a clear and convincing showing the official has an unalterably closed mind on matters critical to the disposition of the proceeding.” Id. at 133-34 (citing Ass'n of Nat. Advertisers, Inc. v. F.T.C., 627 F.2d 1151 (D.C.Cir.1979)).
[¶ 23.] The due process standard for disqualification in a quasi-judicial proceeding is that an official “must be disinterested and free from bias or predisposition of the outcome and the ‘very appearance of complete fairness’ must be present.” Id. at 132-33 (quoting Mordhorst v. Egert, 88 S.D. 527, 223 N.W.2d 501, 505 (1974)). Decision makers “are presumed to be objective and capable of judging controversies fairly on the basis of their own circumstances.” Id. at 133. However, where actual bias or an unacceptable risk of actual bias or prejudgment exists, the decision maker must be disqualified from participating. Id.
[¶ 24.] Determining disqualifying interest does not involve hyper-technical analysis. The interest must be “different from the interest of members of the general public.” Hanig, 2005 SD 10, ¶ 20, 692 N.W.2d at 209. If the interest is different, then the question is whether a reasonably-minded citizen would conclude that the official’s interest or relationship creates a potential to influence the offi- *652 rial's impartiality. See Barrett v. Union Twp. Comm., 553 A.2d 62, 67, 230 N.J.Super. 195, 204-05 (1989). A disqualifying conflict of interest may exist even if the official has not acted upon it. Id. However, if “the circumstances [ ] could reasonably be interpreted as having the likely capacity to tempt,” the official should be disqualified. Voeltz, 1997 SD 69, ¶ 13, 564 N.W.2d at 318. We have recognized that “personal or pecuniary interests” in the outcome of a proceeding have the potential to influence a decision maker’s judgment. Id. Likewise, employment relationships or potential employment relationships with parties involved in the proceeding may cause a disqualifying conflict. Id.
. [¶ 25.] In Hanig, we found a disqualifying conflict of interest because of a councilwoman’s employment and communication from her employer. 2005 SD 10, ¶ 20, 692 N.W.2d at 209. The councilwoman’s employer opposed the liquor license renewal of a competing business and had written a letter to the councilwoman voicing his opposition. Id. Additionally, the councilwoman admitted her tips may be affected. Id. We found that her interest was “different from the interest of members of the general public,” and “of sufficient magnitude ... [to] disqualify] her from participating in the decision.” Id. We said: “Consequently, the - circumstances and facts of each situation should control whether disqualification is required. If circumstances show a likely capacity to tempt the official to depart from his duty, then the risk of actual bias is unacceptable and the conflict of interest is sufficient to disqualify the official.” Id. ¶ 15.
[¶ 26.] In addition, courts have found bias or interest when a member of a zoning board communicated ex parte with parties involved in the matter before the board. In Eacret v. Bonner County, the Idaho Supreme Court held that a county commissioner’s ex parte communication with a zoning variance applicant and viewing of the property in question resulted in a due process violation. 139 Idaho 780, 787, 86 P.3d 494, 501 (2004). The Idaho Supreme Court noted that “[a] quasi-judicial officer must confine his or her decision to the record produced at the public hearing,” and “[a]ny ex parte communication must be disclosed at the public hearing, including a ‘general description of the communication.’ ” Id. at 786, 86 P.3d 494 (citations omitted). The Indiana Court of Appeals found bias when an interested party contacted a member, of the zoning board on at least two occasions and discussed the importance of the member’s opposition to the proposed zoning variance. City of Hobart Common Council v. Behavioral Inst. of Ind., LLC, 785 N.E.2d 238, 253-54 (Ind.App.2003).
[¶ 27.] Although local units of government are not subject to the South Dakota Administrative Procedure Act, SDCL 1-26-26 provides a generally accepted directive against ex parte communications and can provide guidance for quasi-judicial local entities. SDCL 1-26-26 prohibits officials who participate in adjudicatory proceedings from having ex-parte communications. The law provides as follows:
Unless required for the disposition of ex parte matters authorized by law, members of the governing board or officers or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except upon notice and opportunity for all parties to participate. If one or more members of a board or commission *653 or a member or employee of an agency, who is assigned to render a decision in a contested case, took part in an investigation upon which the contested case is based, he shall not participate in the conduct of the hearing nor take part in rendering the decision thereon, but he may appear as a witness and give advice as to procedure. If, because of such disqualification, there is no person assigned to conduct the hearing or render the decision, the agency shall appoint someone pursuant to § 1-26-18.1 to fulfill those duties. A person assigned to render a decision:
(1) May communicate with other members of the agency; and
(2) May have the aid and advice of one or more personal assistants.
SDCL 1-26-26 (emphasis added). The problem with ex-parte communications is that the opposing parties have no notice or opportunity to respond. We recently noted in the context of a judge’s ex parte communication that communicating with one party without giving the opposing party notice and an opportunity to be heard would “not comport with basic understandings of due process.” State v. Wilson, 2008 SD 13, ¶ 19, 745 N.W.2d 666, 672; see State v. Thorsby, 2008 SD 100, ¶ 13, 757 N.W.2d 300, 304 (“If an ex parte communication is invited or initiated by the judge, no prejudice needs to be shown.”) (quoting O’Connor v. Leapley, 488 N.W.2d 421, 423 (S.D.1992)).

Board Member’s Disqualifying Interest

[¶ 28.] The question for this Court is whether the record establishes “actual bias or an unacceptable risk of actual bias.” Hanig, 2005 SD 10, ¶ 11, 692 N.W.2d at 206. The Homeowner’s attorney, Jeff Cole, testified regarding his contact with Van Hove and Van Hove’s demeanor at the board of adjustment hearing. Cole had previously been the Turner County State’s Attorney and had represented Turner County and attended many board of adjustment hearings. Van Hove had served a prior term on the board of adjustment while Cole served as State’s Attorney. Cole testified that Van Hove had always been professional and asked questions and listened to both sides. Cole further testified that he noticed a change in Van Hove’s demeanor at the January 9th hearing. Cole described Van Hove’s demeanor as follows: “Well, I think from the beginning of that hearing it was clear to me that he was more of an advocate of a position than he was an impartial decisionmaker.” The record shows a lively exchange at the beginning of the hearing between Van Hove and Cole about whether part of a plat was drawn to scale. They finally agreed to disagree.
[¶ 29.] Van Hove denied that he had an interest in the outcome and claimed he did not contact the parties’ attorneys on the matter. Contrary to Van Hove’s testimony, the circuit court specifically found that Van Hove had contacted the attorneys for both sides. The court found as follows:
Turner County Commissioner Lyle Van Hove then contacted both Mr. Cole and Mr. McGill [the Elevator’s attorney] to discuss this matter. This was in an effort on Van Hove’s part to attempt to come to some resolution, given the error in issuing the building permit.
Van Hove admitted he was concerned about the county employee’s mistake in issuing the building permit and was upset with the Elevator in the way it handled the building of the facility. However, he believed the Board made its decision based on the facts in front of it. Van Hove made the motion to approve the permit for the Elevator and added several conditions in *654 an attempt to address the Homeowner’s concerns.
[¶ 30.] The question of an alleged bias or risk of bias centers on Van Hove’s involvement as a county commissioner pri- or to sitting as a board of adjustment member. As a county commissioner, Van Hove’s interest was “different from the interest of the members of the general public.” Hanig, 2005 SD 10, ¶20, 692 N.W.2d at 209. Van Hove’s concern was with the potential liability of the county because of its employee’s mistake in issuing the building permit. He acted on that concern when he contacted the parties in the dispute to attempt to negotiate a settlement. In his role as a county commissioner, Van Hove’s concerns about the potential liability to the county or even his attempts at negotiating with the parties to try to reach some agreement are not problematic. He was looking out for the county’s interest. However, in his role as a member of the board of adjustment, his liability concerns and ex parte contacts are problematic because they had the potential to compromise his ability to be a fair and impartial adjudicator.
[¶ 31.] Even though Van Hove claims he did not vote to grant the conditional use permit because of his concern for the county’s potential liability, his interest can still serve to disqualify him as a quasi-judicial decision maker. A disqualifying interest depends on whether a reasonably-minded person would conclude that Van Hove’s interest in this matter had the potential to influence his impartiality. See Barrett, 553 A.2d at 67, 230 N.J.Super. at 204-05. We conclude it does. A disqualifying interest depends on the facts of the case. Here, the disqualification is not simply because Van Hove simultaneously served as both a county commissioner and a board of adjustment member. Nor is he disqualified simply because he had knowledge of some of the facts prior to the quasi-judicial proceeding. He is disqualified because the facts showed that he was more deeply involved. He was concerned that the county may be liable for its employee’s mistake and that he acted upon his concerns in an attempt to get the parties to negotiate a settlement. He became involved in the issue as a county commissioner prior to assuming the role of decision maker on the board of adjustment. Conceivably, his goal was to protect the county’s interest by averting liability and negotiating a settlement. He communicated with both sides and did not inform the parties or the other board members of his ex parte communications or actions as a county commissioner. The attorneys testified that they were not aware of his ex parte communications with both sides until after the hearing.
[¶ 32.] Due process requires fair and impartial consideration. The circumstances here created an unacceptable risk of impartiality. We hold that Van Hove should have been disqualified. Even though the vote was unanimous, we discern from the record that Van Hove actively participated in both the January 9, 2007, and October 9, 2007, hearings. Van Hove made the motion to grant the permit with conditions he proposed. His position as the only county commissioner on the board conceivably carried some weight with the other board members. Because of the possible influence on the other board members’ votes, the permit should be vacated and a new hearing conducted without Van Hove’s participation. When a due process violation exists because of a board member’s disqualifying interest, the remedy is to “place the complainant in the same position had the lack of due process not occurred.” Hanig, 2005 SD 10, ¶ 22, 692 N.W.2d at 210 (citations omitted). Therefore, the Homeowners are entitled to *655 a new hearing before a neutral Board. Turner County ordinances provide for alternates when a member is disqualified. South Dakota law does not require a county commission member serve on a board of adjustment.

Conclusion

[¶ 33.] Because of the violation of a due process right to a fair and impartial adjudication, we reverse and remand for a new hearing before the Board. We need not reach the other issue raised by the Homeowners.
[¶ 34.] KONENKAMP and SEVERSON, Justices, concur.
[¶ 35.] ZINTER, Justice, concurs specially.
[¶ 36.] GILBERTSON, Chief Justice, concurs in result.