#24399-a-DG

**2007 SD 89**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ROBERT ANDERSON,                                    Plaintiff and Appellant,

  v.

STEVEN KELLER,                                       Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
FALL RIVER COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE THOMAS L. TRIMBLE
Judge

\* \* \* \*

STEVEN C. BEARDSLEY
BRAD J. LEE of
Beardsley, Jensen and VonWald, LLC
Rapid City, South Dakota                     Attorneys for plaintiff
                                             and appellant.


GENE R. BUSHNELL of
Costello, Porter, Hill, Heisterkamp,
Bushnell & Carpenter, LLP
Rapid City, South Dakota                     Attorneys for defendant
                                             and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 21, 2007

OPINION FILED **08/15/07**

#24399

GILBERTSON, Chief Justice

[¶1.]    On November 21, 2006, the circuit court of the South Dakota Seventh

Judicial Circuit issued a decision granting Steve Keller's (Keller) motion for

summary judgment in connection with a personal injury claim filed against him by

Robert Anderson (Anderson). An alternative motion for continuance, filed by

Anderson, was denied. The circuit court entered its corresponding order on

December 8, 2006. We affirm.

## FACTS AND PROCEDURE

[¶2.]    There is no dispute that on July 22, 2003, a vehicle owned by the

Angostura Irrigation District (Angostura) and operated by Keller collided with one

driven by Anderson. Anderson was proceeding in a southeasterly direction and had

just emerged onto Fall River County Road 416C from a private drive on his

property. Keller, who was employed by Angostura and at the time was carrying out

his duties as a "ditch runner," was west bound on the county road when the incident

occurred. Keller allegedly collided with the driver's rear quarter of Anderson's

vehicle.[1]

---

1.    The record in this case contains little evidentiary material. Keller's
      statement as to the point of impact is derived from an insurance form that he
      filled out and submitted following the accident. The insurance form bears a
      date stamp of August 3, 2003. Who asked Keller to fill out the insurance
      form and who he submitted it to is not revealed in the record.

      Keller filed a motion to strike with this Court alleging that the insurance
      form and two other documents were improperly included as appendices to the
      Appellant's brief because they were never filed separately with the circuit
      court as evidence. We subsequently denied this motion and thus consider the
      appendices as part of the record on appeal.

-1-

[¶3.]    In a sworn affidavit, Anderson alleges that following the collision, Keller called Angostura's manager and secretary Mick Jenniges to inform him of the incident.[2, 3]  According to Anderson, Jenniges arrived at the scene about 10 – 20 minutes after the collision.  Anderson avers that Jenniges spoke to him and Keller at the scene and then also to a Fall River County sheriff's deputy who arrived at the scene about 45 – 60 minutes after the collision.

[¶4.]    Anderson did not file his personal injury complaint against Keller until March 17, 2006.  On September 14, 2006, Keller filed a motion for summary judgment alleging that Anderson had failed to comply with the statutory notice provisions of SDCL 3-21-2, which is relevant to personal injury claims against a public entity or its employees.  On October 23, 2006, Anderson filed a memorandum in opposition to the motion for summary judgment and an alternative motion for continuance to conduct discovery.  On November 21, 2006, the circuit court issued its decision, granting Keller's motion for summary judgment and denying Anderson's alternative motion for continuance.  The order of the circuit court was entered on December 8, 2006.

---

2.    Anderson's affidavit is included as an appendix to the appellant's brief. Keller also filed a motion to strike this document. *See supra* note 1.

3.    Excerpts from defendant's answers to plaintiff's first set of interrogatories also include a statement by Keller that, following the collision, he called Jenniges to inform him of the incident. Keller also filed a motion to strike this document. *See supra* note 1.

[¶5.]     Anderson raises two issues on appeal:

1.     Whether the notice requirements of SDCL 3-21-2 were satisfied.

2.     Whether the circuit court abused its discretion in not granting Anderson's motion for continuance to conduct discovery as to the scope of notice provided to Angostura.

## STANDARD OF REVIEW

In reviewing a trial court's order granting a motion for summary judgment, "[w]e will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided." "We view all reasonable inferences drawn from the facts in the light most favorable to the non-moving party."

Gakin v. City of Rapid City, 2005 SD 68, ¶7, 698 NW2d 493, 497 (internal citations omitted). Questions of law, such as statutory interpretation, are reviewed de novo. *Id*. "We review the trial court's rulings on discovery matters under an abuse of discretion standard." Maynard v. Heeren, 1997 SD 60, ¶5, 563 NW2d 830, 833 (citing Weisbeck v. Hess, 524 NW2d 363, 364 (SD 1994) (citing Aberle v. Ringhausen, 494 NW2d 179, 182-83 (SD 1992))).

## ANALYSIS AND DECISION

[¶6.]     **1.     Whether the notice requirements of SDCL 3-21-2 were satisfied.**

[¶7.]     Keller's employer, Angostura, is a political subdivision formed under SDCL 46A-4-19.[4] Our legislature has set out the terms under which tort claims can

---

4.     SDCL 46A-4-19 provides:

If a majority of all the votes cast are "Irrigation District-Yes," the [Board of Water and Natural Resources] shall, by resolution, declare the territory duly organized as an irrigation district, under the name and style designated.

(continued . . .)

be filed against public entities, and their employees, including irrigation districts, such as Angostura.[5]  SDCL 3-21-2 provides in pertinent part:

> No action for the recovery of damages for *personal injury*, property damage, error, or omission or death *caused by a public entity or its employees* may be maintained against the public entity or its employees unless *written notice of the time, place, and cause of the injury is given to the public entity* as provided by this chapter within one hundred eighty days after the injury.

(Emphasis added).  The irrigation district's secretary is a person designated to receive notice on its behalf.  SDCL 3-21-3(5).

[¶8.]      This Court has stated that notice in accord with SDCL 3-21-2, sufficient to satisfy the statute, is notice of a claim.  *Gakin*, 2005 SD 68, ¶17, 698 NW2d at 499.  We have also commented that where a plaintiff's right to bring a cause of action against a public entity exists only by virtue of statute, the cause of action is subject to such conditions and limitations as public policy may require or deem desirable.  Griffis v. State, 68 SD 360, 2 NW2d 666, 668 (1942) (citing Barnsdall Refining Corp. v. Welsh, 64 SD 647, 269 NW 853 (1936); Goodhope v. State, 50 SD 643, 211 NW 451 (1926))) (holding that there was no jurisdiction to render a judgment for claims in absence of an appropriation for their payment where a cause of action against the state was premised by statute on an available

---

(. . . continued)
>    Upon filing of a true copy of the resolution with the secretary of state, the irrigation district shall become a political subdivision of the state with the authority, powers, and duties prescribed in chapters 46A-4 to 46A-7, inclusive.

5.     The statutory provision designating irrigation districts as public entities can be found under SDCL 3-21-1(2).

appropriation); *see also* Rowe v. Richards, 32 SD 66, 142 NW 664, 655 (1913) (acknowledging that in a case alleging negligence of a municipality resulting in personal injury and death, where the right to bring a cause of action can be maintained only by virtue of statute, it must be prosecuted in the manner and under the conditions specified), *overruled in part on other grounds by* Ulvig v. McKennan Hosp., 56 SD 509, 229 NW 383 (1930).

[¶9.]     Anderson did not file his complaint against Keller until March 17, 2006, almost two years and eight months after the date of alleged injury that triggered the 180-day notification period under SDCL 3-21-2.  *See Gakin*, 2005 SD 68, ¶15, 698 NW2d at 498 (citing Purdy v. Fleming, 2002 SD 156, ¶14, 655 NW2d 424, 430) (reaffirming that the triggering event for the 180-day notice period under SDCL 3-21-2 is the date of the injury, *not* the date that the injury is discovered).  No other notice of claim is contained in the record nor alleged by Anderson.

[¶10.]     Nevertheless, Anderson argues that the statutory notice provisions were satisfied, alleging substantial compliance through Keller's insurance form. Alternatively, Anderson argues that Angostura's secretary, Jenniges, had actual knowledge of his claim through the telephone call from Keller, informing him of the incident; through his visit to the collision scene, where Anderson alleges he spoke with the parties and a sheriff's deputy; and through Keller's insurance form.

[¶11.]     While this Court has never recognized actual knowledge of a person designated to receive notice for a public entity as a substitute for a plaintiff's

adequate notice of claim,[6] we have set out two exceptions to the express notice requirements of SDCL 3-21-2. In *Smith v. Neville*, 539 NW2d 679, 681-82 (SD 1995), we held that when the acts of a public entity or its agents would affirmatively mislead an objectively reasonable person to believe that the proper authority of the public entity received notice of the plaintiff's injury claim, the public entity and its employees are estopped from using the plaintiff's failure to strictly comply with the statutory notice provisions as a shield to defeat his claim.[7]

---

6.    In *Mount v. City of Vermillion*, 250 NW2d 686, 687 (SD 1977) we reversed the circuit court's order, granting the City of Vermillion summary judgment for the plaintiff's failure to comply with the notice provisions of SDCL 9-24-2, the predecessor to SDCL 3-21-2. Although we cited the city's admission of *actual knowledge*, we also cited the plaintiff's numerous affirmative acts to notice the city of his claim that preceded actual knowledge. *Id*. at 688. The plaintiff was a city employee. Among the affirmative acts that he took to notice the city, the plaintiff filed a claim with the city's hospitalization insurer and submitted an application to the city's accident insurer. In addition, before preparing the application, he discussed it with the city auditor, the person who was statutorily designated to receive notice of claims on behalf of the city. In holding for the plaintiff, we cited the *written notice* to the city's insurance carrier. *Id.* at 689.

7.    In *Smith*, the plaintiff was involved in a collision with a state-owned snowplow on February 13, 1993. 539 NW2d at 680. Within a month of the incident, the plaintiff contacted a claims adjuster, who was working on behalf of the State. *Id.* at 681. The plaintiff subsequently received a check for damages to his vehicle. *Id.* at 682. On March 16, 1993, the plaintiff received a letter and claim form from the South Dakota Department of Transportation. The return address printed on the claim form was that of an office and address other than the statutorily designated recipient of notice of claims. Along with the claim form, the plaintiff included a message requesting the status of his physical injury claim. The addressee did not respond to the plaintiff's inquiry. Following the expiration of the 180-day notice period, the defendant filed a motion for summary judgment on the ground that the plaintiff had failed to comply with SDCL 3-21-2 and SDCL 3-21-3. *Id.* at 681.

There is nothing in the record of the instant case to suggest that Angostura in any way affirmatively misled Anderson; therefore estoppel does not apply.

[¶12.]     In *Myears v. Charles Mix County*, 1997 SD 89, ¶¶3, 13, 556 NW2d 470, 474, we recognized substantial compliance as a stand alone basis for meeting the requirements of SDCL 3-21-2.  In establishing this precedent, we reviewed our prior holding in *Mount*, recounting the affirmative acts of the plaintiff in that case to provide notice of claim.  *Id.* ¶10, 556 NW2d at 473; s*ee also supra* note 6 (reciting material facts of *Mount*).  We noted that prior to SDCL 3-21-2 this Court had recognized substantial compliance in *Inlagen v. Town of Gary*, 34 SD 198, 147 NW 965 (1914) and *Walters v. City of Carthage*, 36 SD 11, 153 NW 881 (1915) and implicitly in *Budahl v. Gordon David Assoc.*, 287 NW2d 489 (SD 1980) following the adoption of SDCL 9-24-2, the predecessor to SDCL 3-21-2.  *Myears*, 1997 SD 89, ¶11, 556 NW2d at 473.  We then concluded that substantial compliance with SDCL 3-21-2 was sufficient since that statute is materially comparable to its predecessor and that the legislature did not take the opportunity when drafting the new statute to include language requiring strict construction.  *Id.* ¶10, 556 NW2d at 473.

[¶13.]     In order to reacquaint those tasked with detecting its existence we restated our prior definition of substantial compliance:

> *"Substantial compliance" with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute.*  It means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted.  *Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served.*  What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

 *Id*. ¶13, 556 NW2d at 474 (emphasis added) (citations omitted).  Determining the

purpose of SDCL 3-21-2 to be consistent with that of its predecessor, we then

confirmed the following seven objectives of SDCL 9-24-2 as still applicable:

> (1) To investigate evidence while fresh; (2) to prepare a defense
> in case litigation appears necessary; (3) to evaluate claims,
> allowing early settlement of meritorious ones; (4) to protect
> against unreasonable or nuisance claims; (5) to facilitate prompt
> repairs, avoiding further injuries; (6) to allow the [public entity]
> to budget for payment of claims; and (7) to insure that officials
> responsible for the above tasks are aware of their duty to act.

*Id*. (citing *Budahl*, 287 NW2d at 492) (citations omitted)).

[¶14.]        In its November 21, 2006 letter decision, the circuit court determined

that Keller's, August 3, 2003 insurance form did not constitute substantial

compliance with SDCL 3-21-2.  In so determining, the circuit court noted that the

personal injury portion of the insurance form was left blank.

[¶15.]        We agree with the circuit court.  While the insurance form states the

time and location of the collision, the fact that the personal injury section is left

blank falls short of meeting the objectives of the statute and hence defeats any

notion of substantial compliance.  Without notice of injury or claim, we cannot

assume that Angostura would have conducted an investigation through the same

lens as it would have with such notice and there would have been no reason to

prepare for litigation.  *See Myears*, 1997 SD 89, ¶13, 556 NW2d at 474 (citing

*Budahl*, 287 NW2d at 492 setting out statutory objectives (1) and (2)).  Without

notice of injury or claims, objectives (3), (4) and (6), set out in *Budahl* and recited in

*Myears* are moot.  *See id*. (citing *Budahl*, 287 NW2d at 492).  Only objectives (5) and

(7) could conceivably be met assuming the appropriate person had been noticed and

that there was some remedial measure that Angostura could have taken, to head off similar incidents. *See id.* (citing *Budahl*, 287 NW2d at 492).

[¶16.] We also conclude that there are two additional bases on which to determine there was no substantial compliance. First, there is nothing in the record to indicate to whom Keller submitted the insurance form. Substantial compliance requires that the person who receives the notice be someone who could take necessary action to ensure that the statutory objectives are met. *See Myears*, 1997 SD 89, ¶¶8, 14, 566 NW2d at 472, 474 (identifying several individuals, besides the county auditor who were statutorily directed to receive notice, were notified of the plaintiff's claim, and were in a position to insure that the objectives of SDCL 3-21-2 were met). Finally, for Anderson to claim there to have been *substantial compliance* on the basis of this record is a misnomer since it appears that *he did nothing* to comply with the statute during the 180-day notice period.

[¶17.] Anderson's argument for reversal on the ground that Jenniges had actual knowledge is lacking not only because we do not recognize actual knowledge as a substitute for adequate notice, but also because the underlying basis for his claim lacks evidentiary support. In addition to Keller's insurance form, which we need address no further, Anderson argues that Jenniges had actual knowledge by virtue of Keller's alleged call following the incident and his alleged visit to the scene of the collision. Once again, there is nothing in the record to indicate that Jenniges was informed of any injury to Anderson or alleged claim, by way of the phone call or on-scene visit. Even had he been so informed such notice would have been conveyed *orally*, which would have been inadequate. *See Gakin*, 2005 SD 68, ¶17 n4, 698

NW2d at 498 n4 (opining that *written notice* is the only form of notice acceptable under SDCL 3-21-2).

[¶18.]     Based on the foregoing analysis we find no ground on which to reverse the circuit court's order granting Keller's motion for summary judgment.

[¶19.]     **2.     Whether the circuit court abused its discretion in not granting Anderson's motion for continuance to conduct discovery as to the scope of notice provided to Angostura.**

[¶20.]     Anderson argues that the circuit court should have granted him a continuance to conduct additional discovery because "he would more fully be able to show the extent of the Angostura Irrigation District's notice of his claim if he were allowed the opportunity to depose Steven Keller and Mick Jenniges." From the record, it appears that the only discovery conducted by Anderson during the three years and three months between the July 2003 collision and his October 2006 motion for continuance was to submit one set of interrogatories to Keller, to which Keller appears to have responded. Anderson had ample time to conduct depositions of Keller and Jenniges, but showed no interest in doing so prior to October 2006. The circuit court may well have decided that Anderson simply wanted to engage in a fishing expedition and we see no reason to compel it to embark on such a voyage at this late date.

[¶21.]     Affirmed.

[¶22.]     MEIERHENRY, Justice, concurs.

[¶23.]     KONENKAMP and ZINTER, Justices, concur in part and concur in result in part.

[¶24.]     SABERS, Justice, deeming himself disqualified, did not participate.

#24399

ZINTER, Justice (concurring and concurring in result).

[¶25.] I concur on Issue 1. I concur in result on Issue 2, regarding Anderson's SDCL 15-6-56(f) motion for a continuance to conduct discovery so he could oppose the motion for summary judgment.

[¶26.] SDCL 15-6-56(f) governs motions for continuances to conduct discovery for purposes of opposing a motion for summary judgment:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

[¶27.] Today, the Court affirms the circuit court's denial of Anderson's Rule 56(f) motion because he "had ample time to conduct depositions of Keller and Jenniges, but showed no interest in doing so prior to October 2006." *Supra* ¶20. I disagree with this justification for affirmance for three reasons.

[¶28.] First, the Court faults Anderson for showing no interest in conducting depositions "during the three years and three months between the July 2003 collision and his October 2006 motion for continuance [except for one set of interrogatories to Keller]." *Id.* However, Anderson cannot be faulted for not having taken *depositions* for three years because, as the Court itself notes, this action was not even commenced until March 17, 2006. *Supra* ¶4. Obviously, depositions could not have been taken during the two-year, eight-month period before the action was even commenced. Moreover, the motion for summary judgment was not filed until September 14, 2006, and the request for continuance was made a little more than a

-11-

month thereafter.  Surely, we cannot charge Anderson with a three-year delay, when Anderson's motion for a continuance was made only a month after the motion for summary judgment.

[¶29.]      Second, it must be remembered that the motion for summary judgment did not involve the *merits* of Anderson's claim.  Rather, it was a motion for summary judgment on *Keller's procedural defense.*  We have affirmed dismissals of summary judgments where plaintiffs "did nothing to obtain [discovery] until some ten months after filing their complaint, when the *merits* of their case [were] called into question. . . ."  Farmers & Merchants State Bank v. Mann, 87 SD 90, 96, 203 NW2d 173, 176 (1973) (emphasis added).  Here, however, the issue over which discovery was requested did not involve the merits of Anderson's claim.  It involved Keller's procedural defense.  It is one thing to charge a party like Anderson with a lack of due diligence in failing to pursue the merits of his own claim.  However, Anderson cannot be faulted for having failed to take depositions on Keller's procedural defense before that defense became a real issue on October 23, 2006, when Keller filed the motion for summary judgment.

[¶30.]      Finally, it must be noted that the adequacy of notice was an affirmative defense.  *See* SDCL 15-6-8(c) (noting that affirmative defenses include any "matter constituting an avoidance or affirmative defense").  Keller alone bore the burden of proving that defense.  Burhenn v. Dennis Supply Co., 2004 SD 91, ¶32, 685 NW2d 778, 786 (stating that: "Since [defendant] asserted the affirmative defenses . . . it bore the burden of proving those . . . claims.").  Because Keller bore the burden of proof on the notice issue, it is inappropriate to hold Anderson

accountable for failing to depose witnesses on Keller's affirmative defense before the defense was even pursued.

[¶31.]     Ultimately, however, I concur in result because Anderson's Rule 56(f) affidavit supporting the continuance was plainly insufficient.   In that affidavit, Anderson's sole justification for the continuance was: "I also believe that I would better be able to resist Defendant's Motion for Summary Judgment if I were allowed an opportunity to depose Steven Keller and Mick Jenniges regarding the extent of their knowledge in this matter."  However, Rule 56(f) requires more.  It requires that "it appear from the affidavits of a party opposing the motion that he cannot *for reasons stated* present by affidavit *facts essential to justify his opposition*[.]"  SDCL 15-6-56(f) (emphasis added).  This requires a showing how further discovery will defeat the motion for summary judgment.  11 James Moore, *Moore's Federal Practice*, § 56.10[8][d] (3d ed 2006).  It further requires that the affidavit must specify why the party cannot present the essential facts at the time of the affidavit.

[¶32.]     In *Trask v. Franco*, 446 F3d 1036 (10thCir 2006), the Tenth Circuit examined these requirements and an analogous affidavit.  Like the affidavit here, the affidavit in *Trask* merely stated "that 'disputed issues of material fact' existed, and 'the information sought by formal discovery would include deposition of the individual defendants, and their supervisor, as well as access to records . . . under the exclusive control of the Defendants . . . .'"  *Id*. at 1041.  In affirming the denial of a continuance under that showing, the Tenth Circuit explained:

> A party seeking to defer a ruling on summary judgment under
> Rule 56(f) must file an affidavit that "explain[s] why facts
> precluding summary judgment cannot be presented.  This
> includes identifying the probable facts not available and what

steps have been taken to obtain these facts." *Comm. for the First Amendment v. Campbell*, 962 F2d 1517, 1522 (10thCir 1992) (citation omitted). "[T]he nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact." *Id.* We have noted that a summary judgment movant's exclusive control of information "is a factor favoring relief under Rule 56(f)." [Price ex rel Price v. W. Res., Inc., 232 F3d 779, 784 (10thCir 2000)].

The Rule 56(f) affidavit of [plaintiffs] neither identifies any "probable facts not available," *Campbell,* 962 F2d at 1522, nor "state[s] with specificity how the additional material will rebut the summary judgment motion," Ben Ezra, Weinstein & Co. v. Am. Online Inc., 206 F3d 980, 987 (10thCir 2000). The affidavit does note that certain records and procedures manuals sought for discovery are under the control of the probation officers and their employer, but "[e]xclusive control does not . . . require automatic relief under Rule 56(f)." *Price,* 232 F3d at 784 (internal quotation marks omitted). Based on the affidavit's lack of specificity, the district court did not abuse its discretion in denying the request for additional discovery.

*Id*. at 1042.

[¶33.]     In this case, Anderson's affidavit also failed to state with specificity the facts he wanted to discover, why he had not previously been able to obtain them, and how those facts would support his opposition to the summary judgment motion. Anderson also did not claim that the facts he sought were under the exclusive control of Keller or Jenniges. Therefore, his motion for continuance was properly denied.

[¶34.]     KONENKAMP, Justice, joins this special writing.