#29616-aff in pt & rev in pt-SRJ
**2022 S.D. 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

YANKTON COUNTY, STATE OF
SOUTH DAKOTA, A Political
Subdivision,                                                    Plaintiff and Appellee,

    v.

LUKE E. MCALLISTER,
MCALLISTER TD, LLC, and B-Y
INTERNET, LLC,                                              Defendants and Appellants,

    and

YANKTON COUNTY COMMISSION;
YANKTON COUNTY BOARD OF
ADJUSTMENT; YANKTON COUNTY
PLANNING COMMISSION; PATRICK E.
GARRITY, in his capacity as YANKTON
COUNTY ZONING ADMINISTRATOR, and
in his INDIVIDUAL CAPACITY; AND
ROBERT W. KLIMISCH, in his capacity as
YANKTON COUNTY STATE'S ATTORNEY,
and in his INDIVIDUAL CAPACITY,

                                                                      Third-Party Defendants and
                                                                      Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICK T. SMITH
Judge

\* \* \* \*

                                                                      ARGUED
                                                                      FEBRUARY 16, 2022
                                                                      OPINION FILED **06/22/22**

\* \* \* \*

JONATHAN A. HEBER
MEREDITH A. MOORE of
Cutler Law Firm, LLP
Sioux Falls, South Dakota

Attorneys for defendants and appellants.


DOUGLAS M. DEIBERT of
Cadwell, Sanford, Deibert &
   Garry LLP
Sioux Falls, South Dakota

Attorneys for plaintiff and appellee and third-party defendants and appellees.


MARK D. FITZGERALD of
Fitzgerald, Vetter, Temple &
   Bartell
Norfolk, Nebraska

Attorneys for third-party defendant and appellee Patrick E. Garrity.

#29616

JENSEN, Chief Justice

[¶1.] Yankton County brought an action seeking an injunction against Luke McAllister, McAllister TD, LLC (MTD), and B-Y Internet, LLC (B-Y) (collectively referred to as "McAllisters") to cease a wireless internet provider business that Yankton County alleged was operating in violation of a county zoning ordinance. McAllisters answered the complaint. Luke and MTD also asserted counterclaims for barratry, alleging the complaint against them was frivolous. Later, B-Y counterclaimed against Yankton County for barratry and abuse of process, while Luke and MTD added counterclaims for abuse of process and expanded their barratry claims against Yankton County. McAllisters also filed a third-party complaint asserting an abuse of process claim against Yankton County Commission (Commission), Yankton County Board of Adjustment (BOA), and Yankton County Planning Commission (collectively referred to as "Yankton County Entities"), Yankton County Zoning Administrator Patrick Garrity, and Yankton County State's Attorney Robert Klimisch. McAllisters also included a claim for civil conspiracy to commit abuse of process against Garrity and Klimisch.

[¶2.] The circuit court granted summary judgment dismissing McAllisters' claims, concluding that they had failed to provide timely notice to the county auditor of their injuries as required by SDCL 3-21-2 and SDCL 3-21-3. The circuit court also determined that Klimisch was entitled to prosecutorial immunity. McAllisters appeal raising two issues: (1) whether the circuit court erred in concluding that SDCL 3-21-2 and SDCL 3-21-3 barred their claims, and (2) whether

-1-

the circuit court erred in concluding that Klimisch is entitled to prosecutorial immunity. We affirm in part and reverse in part.

## Facts and Procedural History

[¶3.]     Luke McAllister owned and operated MTD d/b/a Fire & Ice.[1] Luke's brother, Cam McAllister, is a co-owner of MTD. In October 2017, Cam emailed Garrity regarding a separate business which would provide wireless internet services. Cam's specific question for Garrity was whether a Yankton County zoning ordinance (Ordinance) required any permits or licenses to operate the new business in Yankton County. Garrity responded that he believed a similar wireless internet provider had obtained a conditional use permit (CUP) and asked if Cam's business was associated with that project. Cam told Garrity that he would be starting a new business, B-Y, that would provide the same services as current providers in the area. Garrity did not respond further. Luke formed B-Y on November 29, 2017, and registered the fictitious business name, South Dakota Wireless Internet.

[¶4.]     On March 12, 2018, Garrity sent a letter to Luke stating that B-Y was operating in violation of the Ordinance and needed to obtain a CUP. This letter was also sent to Klimisch and some members of the Commission. Following this letter, Garrity, Klimisch, Luke, and Cam engaged in further discussions regarding the potential need for a CUP. In late March 2018, Garrity told Luke that he would place B-Y on the Commission meeting agenda to address whether B-Y needed a CUP. The issue was never placed on the Commission calendar.

---

1.     Fire & Ice was a recreational and seasonal business that sold various items including alcohol, water, ice, and camping supplies in an open-air building in the spring and summer of 2017.

[¶5.]     Yankton County commenced a civil action against Luke, MTD, and B-Y on June 8, 2018, alleging they were operating a wireless internet business in violation of the Ordinance. The complaint sought a cease and desist injunction against McAllisters, as well as a request for fines and other monetary relief. Klimisch signed the complaint on behalf of Yankton County.

[¶6.]     Luke and MTD filed separate answers alleging that B-Y was a stand-alone legal entity, therefore they could not be held liable for any of the claims against B-Y under SDCL 47-34A-303. Luke and MTD also filed counterclaims for barratry alleging Yankton County's action against Luke and MTD was frivolous and meritless, and undertaken without probable cause to believe it would succeed on the merits. B-Y filed an answer denying that B-Y is a wireless communication facility under the Ordinance and, in the alternative, alleged that it was exempt from obtaining a CUP.

[¶7.]     Between July 2018 and April 2019, the parties engaged in discussions and conducted discovery concerning the issues in the action. On April 17, 2019, the parties entered into a stipulated agreement to dismiss all claims without prejudice, which was conditioned upon reaching a mutual settlement. Luke and MTD later withdrew their consent for the dismissal of the counterclaims. On April 25, 2019, the Yankton County Planning and Zoning Commission (P&Z) held a meeting and voted unanimously (7–0) that B-Y fell within an exception to the Ordinance and had not been operating in violation of the Ordinance. The P&Z recommended their findings to the Commission. There is no indication that the Commission considered or voted on the recommendation.

[¶8.]    On May 8, 2019, McAllisters delivered a letter to Klimisch and several Commissioners that described the events underlying their claim for barratry. McAllisters asserted that Yankton County's claims were frivolous and meritless, and that the County had an insufficient factual basis to file the claim. McAllisters also asserted that no other local wireless internet provider had obtained a CUP or been sued by Yankton County for allegedly operating in violation of the Ordinance.

[¶9.]    Cam met with Commissioners Don Kettering and Dan Klimisch (Commissioner Klimisch) to discuss the lawsuit on May 17, 2019. At this meeting, Cam asked Kettering if he recalled the decision to file the suit and who made the decision to file a lawsuit. Kettering replied, "I think so"; and "I think it was, the issue was over something out at Fire and Ice." Kettering continued when pressed by Cam: "that was, the Fire and Ice reason was, the reason that—the, the issue at Fire and Ice had not been resolved so that was I think the logic of the commission at the time was—[.]"[2]

[¶10.]    On July 3, 2019, McAllisters emailed a letter to Klimisch demanding payment to settle and dismiss their claims against Yankton County. The letter warned that if the parties did not reach a mutual settlement, Luke and MTD intended to amend their counterclaims to add claims for abuse of process. The letter detailed their abuse of process claims asserting that Yankton County was using the lawsuit to stop B-Y from doing business and competing with other local wireless internet providers. The letter stated that McAllisters believed that the

---

2.    McAllisters claimed that Fire & Ice ceased operations in October 2017 due to harassment and pressure from Garrity.

lawsuit was motivated by Garrity's close relationship with an individual who owned a competing business in Yankton. McAllisters stated that they may also have claims for civil conspiracy to commit abuse of process and other claims. McAllisters asked Klimisch to share the letter with the members of the Commission and P&Z. Luke emailed a copy of the letter to the Commission and BOA members on July 15, 2019. On August 23, 2019, Klimisch informed McAllisters that the matter had been turned over to the County's insurance provider.

[¶11.] On August 23, 2019, Luke, MTD, and B-Y filed a third-party complaint for abuse of process against Yankton County Entities, Garrity, individually and in his capacity as the Yankton County Zoning Administrator, and Klimisch, individually and in his capacity as Yankton County State's Attorney. The third-party complaint asserted that Yankton County Entities, Klimisch, and Garrity improperly and wrongfully commenced the lawsuit against McAllisters to prevent them from operating B-Y and Fire & Ice. The third-party complaint also included a claim against Garrity and Klimisch for civil conspiracy to commit abuse of process, alleging that the two conspired to use the lawsuit to stop B-Y and Fire & Ice from operating. Luke and MTD amended their counterclaims against Yankton County on September 27, 2019, alleging abuse of process and expanding their barratry claim. On September 27, 2019, B-Y also amended its answer to add similar counterclaims for barratry and abuse of process against Yankton County.

[¶12.] Yankton County Entities and Klimisch filed a motion for summary judgment on September 11, 2020, which Garrity joined on September 16, 2020. The motion sought dismissal of McAllisters' claims, asserting that McAllisters had failed

to provide timely notice of their claims to the county auditor as required by SDCL 3-21-2 and SDCL 3-21-3. They also argued that Klimisch was entitled to prosecutorial immunity.

[¶13.] The circuit court granted summary judgment in favor of Yankton County Entities, Klimisch, and Garrity, determining that McAllisters failed to give written notice of their claims to the county auditor within 180 days from the date of their injury. The court concluded that McAllisters' injuries occurred as to all claims when McAllisters answered Yankton County's complaint. The circuit court also concluded that the barratry counterclaims did not substantially comply with the written notice requirements in SDCL 3-21-2 or SDCL 3-21-3. Additionally, the circuit court determined that Klimisch was entitled to prosecutorial immunity because he brought the lawsuit in his capacity as the Yankton County State's Attorney. Yankton County, which had not joined in the original summary judgment motion, filed a motion for summary judgment on the same grounds after the circuit court entered its memorandum decision. Without waiving claims of error, the parties stipulated to the inclusion of Yankton County in the circuit court's order granting summary judgment.

[¶14.] McAllisters appeal the circuit court's order granting the motions for summary judgment, raising two issues:

> 1. Whether the circuit court erred in concluding that McAllisters' claims were barred under SDCL 3-21-2 and SDCL 3-21-3.
>
> 2. Whether the circuit court erred in concluding that Klimisch was entitled to prosecutorial immunity.

## Standard of Review

[¶15.] "A grant or denial of summary judgment is reviewed de novo." *Abata v. Pennington Cnty. Bd. of Comm'rs*, 2019 S.D. 39, ¶ 8, 931 N.W.2d 714, 718. "When conducting a de novo review, we give no deference to the circuit court's decision to grant summary judgment. When reviewing a circuit court's grant of summary judgment, this Court only decides whether genuine issues of material fact exist and whether the law was correctly applied." *Lammers v. State by & through Dep't of Game, Fish & Parks*, 2019 S.D. 44, ¶ 9, 932 N.W.2d 129, 132 (citation omitted) (internal quotation marks omitted). "We view the evidence most favorably to the nonmoving party and resolve reasonable doubts against the moving party." *Id.* (citation omitted).

## Analysis and Decision

### 1. Whether the circuit court erred in concluding that McAllisters' claims are barred by SDCL 3-21-2 and SDCL 3-21-3.

### *Barratry*

[¶16.] "This Court has interpreted SDCL 3-21-2 as requiring notice of injury for all causes of action sounding in tort." *Wolff v. Sec'y of S.D. Game, Fish & Parks Dep't*, 1996 S.D. 23, ¶ 20, 544 N.W.2d 531, 534. SDCL 3-21-2 provides in part that:

> No action for the recovery of damages for personal injury, property damage, error, or omission or death caused by a public entity or its employees may be maintained against the public entity or its employees unless written notice of the time, place, and cause of the injury is given to the public entity as provided by this chapter within one hundred eighty days after the injury.

In applying SDCL 3-21-2, we have held that "[i]n order to *commence* suit on [tort claims], the provision of statutory notice was mandatory." *Finck v. City of Tea*, 443

N.W.2d 632, 635 (S.D. 1989) (emphasis added); *see also Wolff,* 1996 S.D. 23, ¶ 21, 544 N.W.2d at 535 (concluding that the plaintiffs "should have given notice of injury as a predicate for bringing [their] cause of action"). SDCL 3-21-3(2) requires the notice to be given to the county auditor for claims against a county.

[¶17.]      Luke and MTD assert that the circuit court erred in granting summary judgment in favor of Yankton County on their barratry claims because their counterclaims substantially complied with SDCL 3-21-2. Luke and MTD argue that the notice period under SDCL 3-21-2 was triggered, at the earliest, when Yankton County commenced the action for injunctive relief against McAllisters. They maintain that the counterclaims, served within 30 days after Yankton County commenced its action, substantially complied with SDCL 3-21-2 by timely putting Yankton County on notice of their barratry claims. Yankton County responds that service of the barratry counterclaims does not satisfy the objectives of SDCL 3-21-2 because the counterclaims did not provide sufficient information to put Yankton County on notice of the barratry injury. Yankton County also argues that permitting the counterclaims to satisfy the requirements of the notice statute would defeat the purpose of the statute.

[¶18.]      "[S]ubstantial compliance is sufficient to satisfy the notice requirements of SDCL 3-21-2 and -3." *Myears v. Charles Mix Cnty.,* 1997 S.D. 89, ¶ 13, 566 N.W.2d 470, 474. For purposes of SDCL 3-21-2 and SDCL 3-21-3, we have stated that:

> "Substantial compliance" with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It means that a court should determine whether the statute has been followed sufficiently so

> as to carry out the intent for which it was adopted. Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

*Id.* (quoting *Larson v. Hazeltine*, 1996 S.D. 100, ¶ 19, 552 N.W.2d 830, 835). It is ultimately a legal question for the Court as to whether the facts of a case constitute substantial compliance. *See id.* ¶ 13, 566 N.W.2d at 475 (determining that plaintiff substantially complied with the notice statutes as a matter of law); *see also Ind. State Highway Comm'n v. Morris*, 528 N.E.2d 468, 471 (Ind. 1988) ("The question of compliance is not a question of fact for the jury but ultimately a legal determination to be made by the court.").

[¶19.] In considering whether a particular notice substantially complies with the statute, we have discussed seven purposes for the notice statute in SDCL 3-21-2. *Anderson v. Keller*, 2007 S.D. 89, ¶ 13, 739 N.W.2d 35, 40. These purposes include:

> (1) To investigate evidence while fresh; (2) to prepare a defense in case litigation appears necessary; (3) to evaluate claims, allowing early settlement of meritorious ones; (4) to protect against unreasonable or nuisance claims; (5) to facilitate prompt repairs, avoiding further injuries; (6) to allow the [public entity] to budget for payment of claims; and (7) to insure that officials responsible for the above tasks are aware of their duty to act.

*Id.* (quoting *Myears*, 1997 S.D. 89, ¶ 13, 556 N.W.2d at 474). Additionally, "[s]ubstantial compliance requires that the person who receives the notice be someone who could take necessary action to ensure that the statutory objectives are met." *Id.* ¶ 16, 739 N.W.2d at 40; *see also* SDCL 3-21-3.

[¶20.] A counterclaim may substantially comply with SDCL 3-21-2 and SDCL 3-21-3 when it satisfies the objectives of the notice statutes. Other courts considering a similar issue have held that a counterclaim filed against a public entity that arises out of the same facts as the complaint filed by the public entity is sufficient to satisfy the purposes of requiring notice to public entities. *See Urb. Renewal Agency of Coos Bay v. Lackey*, 549 P.2d 657, 661 (Or. 1976) (holding that a tort counterclaim filed against a state agency substantially satisfies the purposes of the notice statute when served on the agency's attorney); *see also State, By & Through Welfare Div. of Dep't of Health, Welfare & Rehab. v. Cap. Convalescent Ctr., Inc.*, 547 P.2d 677, 680 (Nev. 1976) (finding that a compulsory counterclaim arising out of the same transaction or occurrence as the complaint does not create surprise, and therefore satisfies the purpose of the notice statute).

[¶21.] Here, Luke and MTD's counterclaims satisfied the written notice requirements as the counterclaim advised Yankton County of the time, location, and cause of the injury by alleging a claim for injuries that resulted from Yankton County's initiation of an alleged frivolous and meritless action. Although the counterclaims were not provided to the county auditor, they were served on Klimisch, as the Yankton County State's Attorney, who was "someone who could take necessary action to ensure that the statutory objectives are met" under SDCL 3-21-3. *See Anderson*, 2007 S.D. 89, ¶ 16, 739 N.W.2d at 40.

[¶22.] The counterclaims gave Yankton County the opportunity to investigate and evaluate the claims, prepare a defense, protect itself from additional claims, budget for the action, and put Yankton County officials on notice that they had a

duty to act. *See Myears*, 1997 S.D. 89, ¶ 15, 566 N.W.2d at 475 (finding substantial compliance when "the county received all the benefits early notice confers"); *see also Helle v. Brush*, 292 N.E.2d 372, 374 (Ill. 1973) (explaining that a counterclaim satisfies the objectives of a notice statute because "the fact that the public entity commenced the action indicates that the facts were not stale, and the avowed purpose of avoiding the expenses of litigation cannot be achieved since the public entity initiated the litigation"). The counterclaims further provided Yankton County an opportunity to settle or dismiss the alleged meritless claims against Luke and MTD. *See id.*

[¶23.] Because Luke and MTD's barratry counterclaim arises from the complaint filed by Yankton County for the alleged Ordinance violation, any risk of surprise to Yankton County was minimal. Additionally, "there is . . . no reason to require separate written notice of such a claim in advance of the filing of a counterclaim because the expense of litigation has already been substantially incurred" once Yankton County initiated the lawsuit. *Urb. Renewal*, 549 P.2d at 661. Under these circumstances, allowing Luke and MTD to pursue their counterclaim against Yankton County "recognize[s] the fundamental fairness of permitting a defendant to assert any claim he might have arising out of the occurrence for which he is being sued, as well as the desire to permit a defendant to have his complete day in court." *See Helle*, 292 N.E.2d at 375.

[¶24.] "We must be mindful of the consequences of a construction that would impose a standard of absolute compliance on a claimant who has been injured by a public entity." *Myears*, 1997 S.D. 89, ¶ 16, 566 N.W.2d at 475 (citation omitted).

Notice statutes "are designed to protect governmental agencies from stale and fraudulent claims, provide an opportunity for timely investigation and encourage settling meritorious claims[, but] should not be used as traps for the unwary when their underlying purposes have been satisfied." *Id.* ¶ 12, 566 N.W.2d at 473 (quoting *Johnson v. San Diego Unified Sch. Dist.*, 266 Cal. Rptr. 187, 190 (Cal. Ct. App. 1990)) (internal quotation marks omitted). Luke and MTD's counterclaims gave Yankton County "all the benefits early notice confers. To now prohibit a claim against it would give the statute an unintended inflexibility and artificial importance." *See id.* ¶ 15, 566 N.W.2d at 475. We conclude that the circuit court erred in granting summary judgment for Yankton County on Luke and MTD's barratry counterclaims.[3]

[¶25.]      B-Y also filed a counterclaim for barratry against Yankton County, but unlike Luke and MTD's barratry counterclaims, B-Y did not file the barratry claim against Yankton County for more than a year after Yankton County served its complaint. B-Y argues that its injury arising from the barratry action "is one of a 'continuing' nature" and is not complete until Yankton County's action ends in

---

3.      In September 2017, Luke and MTD amended their barratry counterclaims to include an allegation that Yankton County's action was also malicious under SDCL 20-9-6.1. We have recognized that SDCL 3-21-2 does not require strict compliance with the information supplied in the written notice. *See Myears*, 1997 S.D. 89, ¶ 15, 566 N.W.2d at 474–75. Rather, written notice is sufficient if it "included enough pertinent information to constitute adequate notice" of the *injury*. *Id.* ¶ 15, 566 N.W.2d at 474. SDCL 3-21-2 does not require the claimant to provide every theory of liability; it only requires written notice of the time, place, and cause of injury underlying the claimant's action. Because Luke and MTD provided sufficient notice of a barratry claim, they can pursue their barratry counterclaim without limitation under SDCL 20-9-6.1.

finality. B-Y claims that because the statutory period did not accrue until Yankton County dismissed its claims on March 12, 2021, either the July 3, 2019 letter or B-Y's counterclaim filed on September 27, 2019 satisfied the notice requirement in SDCL 3-21-2.

[¶26.] SDCL 20-9-6.1 defines barratry as "the assertion of a frivolous or malicious claim or defense or the filing of any document with malice or in bad faith by a party in a civil action." This Court has further explained that:

> A frivolous action exists when "the proponent can present no rational argument based on the evidence or law in support of the claim" . . . . To fall to the level of frivolousness there must be such a deficiency in fact or law that no reasonable person could expect a favorable judicial ruling . . . . [F]rivolousness "connotes an improper motive or [a] legal position so wholly without merit as to be ridiculous."

*Pioneer Bank & Tr. v. Reynick*, 2009 S.D. 3, ¶ 15, 760 N.W.2d 139, 143 (quoting *Citibank (S.D.), N.A. v. Hauff*, 2003 S.D. 99, ¶¶ 31–32, 668 N.W.2d 528, 537 (some quotation marks omitted)). "A malicious action is one brought for an improper, unjustifiable motive." *Harvieux v. Progressive N. Ins. Co.*, 2018 S.D. 52, ¶ 26, 915 N.W.2d 697, 704 (citation omitted). A malicious action exists "if it is begun in malice, and without probable cause to believe it can succeed, and which finally ends in failure." *Id.* (citation omitted).

[¶27.] When, as here, there exists a dispute as to the date on which the notice requirements of SDCL 3-21-2 are implicated, "we have continuously held that the date of the injury is the triggering event for the 180-day period. *The statute clearly says, 'after the injury,' not 'after the discovery of the injury.'*" *Gakin v. City of Rapid*

*City*, 2005 S.D. 68, ¶ 15, 698 N.W.2d 493, 498 (quoting *Purdy v. Fleming*, 2002 S.D. 156, ¶ 14, 655 N.W.2d 424, 430).

[¶28.]     Here, contrary to B-Y's contention, the injury occurred when Yankton County *brought* the alleged frivolous or malicious action. *See Citibank (S.D.), N.A.*, 2003 S.D. 99, ¶ 30, 668 N.W.2d at 537 (providing that a claim for "barratry exists when a party *brings* a frivolous or malicious claim" (emphasis added)).  Any injury to B-Y was sustained on that date, and there was no need to wait until the final determination of Yankton County's suit before B-Y could institute the barratry action.  Rather, as SDCL 20-9-6.1 provides, the barratry cause of action "may be asserted by filing a pleading *in the same civil action* in which the claim of barratry arises or in a subsequent action."  (Emphasis added.)  Therefore, even if B-Y did not discover its alleged injury and was unable to prove all the elements of its barratry claim until the Yankton County action was dismissed, the date of injury for the barratry claim occurred no later than the date when B-Y was served with Yankton County's complaint.

[¶29.]     B-Y took no action to put Yankton County on notice of its barratry injury as required by the notice statutes within the 180 days after Yankton County commenced the alleged frivolous or malicious action.  Neither B-Y's barratry counterclaim nor B-Y's letters sent to Yankton County were provided within 180 days of the alleged injury.  The circuit court did not err in granting summary judgment for Yankton County on B-Y's claim for barratry.

### *Abuse of Process*

[¶30.]       We next consider whether the circuit court erred in determining that McAllisters failed to provide timely notice pursuant to SDCL 3-21-2 and SDCL 3-21-3 of the abuse of process claims against Yankton County, Yankton County Entities, Klimisch, and Garrity. McAllisters filed the third-party complaint for abuse of process against Yankton County Entities, Klimisch, and Garrity on August 23, 2019, more than a year after Yankton County commenced the injunction action against McAllisters. Similarly, it was not until a year after Yankton County commenced suit that Luke and MTD amended their counterclaims against Yankton County to add claims for abuse of process and B-Y filed its abuse of process counterclaim against Yankton County.

[¶31.]       In the counterclaim and third-party complaint, both the abuse of process and barratry claims focus on Yankton County's commencement of the lawsuit, a lawsuit McAllisters believed to be frivolous and initiated for an ulterior purpose. In regard to a date of injury for purposes of SDCL 3-21-2, McAllisters' appellate briefs do not clearly distinguish their abuse of process claims from their barratry claims.

[¶32.]       We recognize that barratry and abuse of process are similar causes of action and may have similar underlying injuries for purposes of SDCL 3-21-2. However, these claims are distinct and have different elements. In *Specialty Mills, Inc. v. Citizens State Bank*, we provided the following explanation of an abuse of process claim:

> Abuse of process consists of the malicious misuse or
> misapplication of legal process *after its issuance* to accomplish

> some collateral purpose not warranted or properly attainable thereby.
>
> . . . .
>
> It differs from malicious prosecution [or barratry] in that it is not necessary to show that the action in which the process was used was without probable cause or that it terminated favorably to the plaintiff.

1997 S.D. 7, ¶ 20, 558 N.W.2d 617, 623 (citation omitted). "The essential elements of [the abuse of process] cause of action are 1) an ulterior purpose, and 2) an act in the use of process which is improper in the regular prosecution of the proceeding."[4] *Id.*

[¶33.] At oral argument, when asked to clarify when the abuse of process injury occurred, McAllisters offered that Yankton County's filing of its complaint in July 2018 was the triggering event for purposes of SDCL 3-21-2. McAllisters further acknowledged that they did not thereafter provide notice within 180 days of Yankton County commencing its lawsuit, and Luke and MTD have not argued that their barratry counterclaim provided sufficient notice of the cause of any injury associated with their abuse of process claim. Instead, McAllisters rely solely upon theories of fraudulent concealment and estoppel to argue that SDCL 3-21-2 was tolled with respect to their abuse of process claims. They contend that the July 3, 2019 letter to Klimisch or their third-party complaint or amended counterclaims alleging abuse of process provided sufficient notice of the abuse of process injury within the tolled notice period. Therefore, we must determine whether the notice period under SDCL 3-21-2 was tolled by fraudulent concealment or estoppel.

---

4.    Whether McAllisters have alleged acts aligning with these elements is not at issue in this appeal; rather, only the question whether they provided timely notice of their alleged abuse of process claims is before us.

-16-

[¶34.]     "[F]raudulent concealment may toll the statute of limitations and this

doctrine may be extended to a notice of claim provision." *Gakin*, 2005 S.D. 68, ¶ 18,

698 N.W.2d at 499 (quoting *Purdy*, 2002 S.D. 156, ¶ 18, 655 N.W.2d at 431)

(internal quotation marks omitted). As we have previously explained:

> In the absence of some trust or confidential relationship between the parties there must be some affirmative act or conduct on the part of the defendant designed to prevent, and which does prevent, the discovery of the cause of action. Mere silence, in the absence of a duty to speak, is not ordinarily sufficient . . . . [I]f a trust or confidential relationship exists between the parties, which imposes a duty to disclose, mere silence by the one under that duty constitutes fraudulent concealment.

*Conway v. Conway*, 487 N.W.2d 21, 23–24 (S.D. 1992) (citation omitted). Therefore,

"we first must determine whether a fiduciary relationship existed between the

parties." *Purdy*, 2002 S.D. 156, ¶ 18, 655 N.W.2d at 431.

> The existence of a fiduciary duty and the scope of that duty are questions of law for the court. Generally, in such a relationship, the "property, interest or authority of the other is placed in charge of the fiduciary." In *Garrett v. BankWest, Inc.*, we found that a "fiduciary relationship imparts a position of peculiar confidence placed by one individual in another." Normally, in a fiduciary relationship, one of the parties has a superior power over the other.

*Gakin*, 2005 S.D. 68, ¶ 19, 698 N.W.2d at 500 (citation omitted).

[¶35.]     A fiduciary relationship was not present here. McAllisters did not

place B-Y or MTD under the authority and control of Yankton County. Further,

Yankton County, Yankton County Entities, Garrity, and Klimisch did not have a

confidential relationship with McAllisters, and McAllisters have not identified any

special duties arising from Yankton County's application of its zoning regulations.

*See Fodness v. City of Sioux Falls*, 2020 S.D. 43, ¶ 15, 947 N.W.2d 619, 626 (A

special duty "arises only when there are additional indicia that the municipality has undertaken the responsibility of not only protecting itself, but also undertaken the responsibility of protecting a particular class of persons[.]" (citation omitted)).

[¶36.]        "In the absence of a fiduciary relationship, fraudulent concealment does not exist simply because a cause of action remains undiscovered, but only when the defendant affirmatively prevents discovery." *Purdy*, 2002 S.D. 156, ¶ 20, 655 N.W.2d at 431.  McAllisters claim they were unaware of the alleged malicious nature of Yankton County's action until May 2019, when a commissioner related that the County's decision to commence the lawsuit had to do with an issue related to Fire & Ice (the unrelated business owned and operated by Luke).  However, viewing the evidence most favorably to McAllisters, there is no evidence in the record of affirmative actions by Yankton County, Yankton County Entities, Garrity, or Klimisch that were designed to prevent McAllisters from discovering their alleged abuse of process injury.  As such, the doctrine of fraudulent concealment did not toll the notice period.

[¶37.]        McAllisters also argue that Yankton County, Yankton County Entities, Garrity, and Klimisch are estopped from asserting the affirmative defense of SDCL 3-21-2.  "[A]n estoppel can be applied against public entities in exceptional circumstances to 'prevent manifest injustice.'"  *Smith v. Neville*, 539 N.W.2d 679, 682 (S.D. 1995) (citation omitted).  "While the State and its agents have no legal duty to gratuitously hand out legal advice on notice statutes, neither do they have the right under the statutes to affirmatively mislead."  *Id.* at 681–82.  However, "mere innocent silence or inaction will not work an estoppel unless one remains

silent when he has a duty to speak.  Generally, to work an estoppel, there must be some intended deception in the conduct or declaration of the party to be estopped. The conduct must have induced the other party to alter his position or do that which he would not otherwise have done to his prejudice." *Id.* at 682 (quoting *Hanson v. Brookings Hosp.*, 469 N.W.2d 826, 828–29 (S.D. 1991)).

[¶38.]        In *Smith v. Neville*, we applied estoppel to toll the 180-day notice period when the State and its claims adjuster took affirmative actions "that would cause an objectively reasonable person to believe that the proper authorities of the State had received notice and that nothing else was necessary on the part of the private citizen to have his claim processed." *Id.* at 682.  Contrary to *Smith*, Yankton County, Yankton County Entities, Garrity, and Klimisch did not take affirmative actions that would have created a reasonable impression that McAllisters had complied with the notice statute for their abuse of process claims. Yankton County had no duty to advise McAllisters to provide notice of any other potential injuries arising from Yankton County's complaint.

[¶39.]        Therefore, the circuit court properly dismissed McAllisters' abuse of process claims against Yankton County, Yankton County Entities, Garrity, and Klimisch.

### Civil Conspiracy of Abuse of Process

[¶40.]        McAllisters argue that Garrity and Klimisch conspired to commit abuse of process by filing and leveraging the lawsuit against McAllisters in order to stop them from operating B-Y and Fire & Ice.  "A civil conspiracy is, fundamentally, an agreement to commit a tort." *Kirlin v. Halverson*, 2008 S.D. 107, ¶ 59, 758

N.W.2d 436, 455 (emphasis omitted) (citation omitted). "This is not an independent cause of action, but is 'sustainable only after an underlying tort claim has been established.'" *Id.* (emphasis omitted) (citation omitted) (internal quotation marks omitted). McAllisters' abuse of process claims against Garrity and Klimisch are barred under SDCL 3-21-2. As such, McAllisters' claim for civil conspiracy to commit abuse of process cannot be maintained, and the circuit court did not err in granting summary judgment as to this claim.[5]

## Conclusion

[¶41.] We affirm the circuit court's grant of summary judgment for Yankton County, Yankton County Entities, Garrity, and Klimisch on B-Y's counterclaim for barratry and on McAllisters' claims for abuse of process and civil conspiracy to commit abuse of process. We reverse the circuit court's grant of summary judgment for Yankton County as to the barratry counterclaims filed by Luke and MTD.

[¶42.] KERN, SALTER, DEVANEY, and MYREN, Justices, concur.

---

5. Because we affirm the circuit court's dismissal of McAllisters' claims of abuse of process and civil conspiracy to commit abuse of process against Klimisch, we decline to address whether Klimisch was entitled to prosecutorial immunity.